**Robert K. CHRISTOFFERSON and Oleta L. Christofferson, Plaintiffs-Appellants,**

v.

**HALLIBURTON COMPANY et al., Defendants-Appellees.**

No. 74–3378.

United States Court of Appeals, Fifth Circuit.

July 12, 1976.

---

W. Paul Hawley, Lafayette, La., for plaintiffs-appellants.

Joseph L. Waitz, Houma, La., for Diamond M. and Argonaut.

H. Lee Leonard, Lafayette, La., for Coastal Rubber Co. and Unigard Ins. Co.

Allen L. Smith, Jr., Lake Charles, La., for Halliburton.

John B. Scofield, Lake Charles, La., for Phillips Petroleum Co.

W. Eugene Davis, New Iberia, La., for Aeroquip and Travelers.

Before GODBOLD and RONEY, Circuit Judges, and FREEMAN, District Judge.

RONEY, Circuit Judge:

This appeal presents the issue of whether the wife of an injured seaman has a cause of action for loss of consortium against the third parties allegedly responsible for her husband's injuries under either the Jones Act, the general maritime law, or the laws of the State of Louisiana. The United States District Court for the Western District of Louisiana granted defendants' motions to dismiss the claim of Oleta J. Christofferson for loss of consortium occasioned by the injuries which her husband, Robert K. Christofferson, sustained while working on a jack-up drilling barge located in federal waters off the Louisiana coast. From the final judgment dismissing her claim with prejudice, Mrs. Christofferson prosecuted this appeal. We affirm.

## THE JONES ACT

Prior to the Jones Act, a seaman who was injured by his employer's negligence had no cause of action sounding in negligence against his employer. *The Osceola*, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903). Where the injured seaman had no such claim for negligence, his wife could not and did not have a derivative claim for loss of

consortium based on negligence. When Congress, in 1915, gave a seaman the right to recover for personal injury caused by his employer's negligence under the Jones Act, it did not authorize recovery by the seaman's wife for loss of consortium but restricted the cause of action to "any seaman." As to nonfatal injuries, 46 U.S.C.A. § 688 reads:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . .

In *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257 (2nd Cir. 1963), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964), the Second Circuit discussed the failure of the Jones Act to confer a right upon the spouse of an injured seaman to recover for loss of consortium. Concluding that such an omission could not be dismissed as an inadvertence, the court stated:

The policy of the Federal Employers' Liability Act, the regime which the Jones Act made applicable to seamen, was that the new remedy for the employee was to be exclusive and that claims of relatives recognized by state law were to be abrogated; the FELA had been thus authoritatively construed before the Jones Act was passed, *New York Central & H. R. R. Co. v. Tonsellito*, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917); . . .

*Id.* at 266. *See also Canal Barge Co., Inc. v. Griffith*, 480 F.2d 11, 31 (5th Cir. 1973), *modified* 513 F.2d 911 (1975), *cert. denied*, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975), where in a different context this Court specifically approved the *Igneri* holding.

■ Although neither party cites a controlling case, we hold that the district court properly dismissed Mrs. Christofferson's claim under the Jones Act for two reasons. *First*, 46 U.S.C.A. § 688 specifically provides that an injured seaman, and not his wife, may maintain an action for damages at law. *Second*, courts have held that the wife of an injured employee has no claim for loss of consortium under the Federal Employers' Liability Act, the statutory scheme made applicable to seamen under the Jones Act. *See Kinney v. Southern Pacific Co.*, 232 Or. 322, 375 P.2d 418 (1962); *Louisville & N. R. Co. v. Lunsford*, 216 Ga. 289, 116 S.E.2d 232 (1960).

## THE GENERAL MARITIME LAW

■ Although an injured seaman did not have a negligence claim against his employer prior to the passage of the Jones Act in 1915, in 1902 the Supreme Court accepted as settled this proposition of general maritime law:

That the vessel and her owner are, both by English and American law, liable to an indemnity for injuries received by seamen in consequence of the unseaworthiness of the ship, or a failure to supply and keep in order the proper appliances appurtenant to the ship.

*The Osceola, supra*, 189 U.S. at 175, 23 S.Ct. at 487. An action for injuries occasioned by the unseaworthiness of the ship, however, has traditionally been that of the seaman himself and Mrs. Christofferson has been unable to cite any case in which a court has allowed the injured seaman's wife to recover for loss of consortium under a theory of unseaworthiness.

In *Igneri v. Cie. de Transports Oceaniques, supra*, the Second Circuit held that the wife of an injured longshoreman did not have a cause of action for loss of consortium based upon a warranty of seaworthiness. Although Mrs. Christofferson concedes that *Igneri* is the leading case on this question of law, on appeal she presents two reasons why the *Igneri* decision is outmoded today due to intervening changes in the law. *First*, a majority of the states, some 37 in number, now allow the wife of an injured man to recover for loss of consortium whereas only 11 states and the District of Columbia permitted such a recovery when *Igneri* was written. *Second*, the deci-

sion of the Supreme Court in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), contains certain language which, Mrs. Christofferson asserts, arguably supports a result contrary to that which the Second Circuit reached in *Igneri*.

Mrs. Christofferson's argument that *Igneri* would now be decided differently because a majority of the states now permit the recovery which the court denied in *Igneri* is without merit. *See generally* 36 A.L.R.3d 900 (1971). The *Igneri* court itself referred to common law which is uniform or nearly so.

> Maritime law draws on many sources; when there are no clear precedents in the law of the sea, admiralty judges often look to the law prevailing on the land. See *Gilmore and Black*, Admiralty (1957), § 1–16. At least this much is true. If the common law recognized a wife's claim for loss of consortium, uniformly or nearly so, a United States admiralty court would approach the problem here by asking itself why it should not likewise do so; if the common law denied such a claim, uniformly or nearly so, the inquiry would be whether there was sufficient reason for an admiralty court's nevertheless recognizing one. Compare *The Harrisburg*, 119 U.S. 199, 213–214, 7 S.Ct. 140, 30 L.Ed. 358 (1886).

323 F.2d at 259–260.

Recognition of a wife's claim by some 37 states, however, does not mean that the common law is uniform, or nearly so. Much of the change in the law has come about through statutory modification of the law, rather than change in the common law. One fourth of the states steadfastly continue to deny the wife of an injured man a cause of action for loss of consortium. Against this background of division among the states, we turn to consider Mrs. Christofferson's contention that the rational of the Court in *Sea-Land Services, Inc. v. Gaudet, supra*, supports her claim for loss of consortium in the case at bar.

In *Gaudet*, the Supreme Court held that a longshoreman's widow has a maritime action for wrongful death even though her husband prosecuted his claim for personal injury during his lifetime. The Court stated that, under the maritime wrongful death remedy, the widow, and other dependents, may recover damages for their "loss of support, services, and society, as well as funeral expenses." 414 U.S. at 584, 94 S.Ct. at 814. Defining the term "society" as embracing such mutual family benefits as "love, affection, care, attention, companionship, comfort and protection," the Court noted that a clear majority of the states now permit recovery for loss of society in wrongful death actions. "Thus," the Court in *Gaudet* continued, "our decision to permit recovery for society aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes." 414 U.S. at 587–588, 94 S.Ct. at 816. Mrs. Christofferson asserts that the Supreme Court's desire to align the dependents' recovery in a maritime death action with that recovery which a majority of the states would allow dependents supports her claim for loss of consortium in the case at bar because a majority of the states would permit her to maintain such an action in state court.

■ The simple answer to Mrs. Christofferson's argument is that her claim for loss of consortium does not arise from the wrongful death of her husband. In *Gaudet* the Supreme Court implicitly limited a claim for loss of society to a maritime wrongful death action when it explained that no double recovery was involved in permitting the widow in *Gaudet* to maintain an action for wrongful death even though her husband had been compensated for his injuries during his lifetime. The Court reasoned that:

> Obviously, the decedent's recovery did not include damages for the dependents' loss of services or of society, and funeral expenses. Indeed, these losses—unique to the decedent's dependents—could not accrue until the decedent's death.

*Id.* at 414 U.S. 591–592, 94 S.Ct. at 818. Restricting loss of society to that arising after the death of an injured maritime

worker indicates no intention to create an action for loss of consortium under the general maritime law where the husband was not fatally injured.

## THE LAW OF THE STATE OF LOUISIANA

Indisputably the Court of Appeals of Louisiana has ruled that a wife does not have a cause of action in Louisiana for mental anguish, emotional distress, and loss of past and future consortium which resulted from injury to her husband. *McKey v. Dow Chemical Co.,* 295 So.2d 516 (La.App. 1974). *See also Hickman v. Parish of East Baton Rouge,* 314 So.2d 486 (La.App.), *writ denied,* 318 So.2d 59 (S.Ct.La.1975); *Johnston v. Fidelity National Bank,* 152 So.2d 327 (La.App.1963); *Bea v. Russo,* 21 So.2d 530 (La.App.1945).

In *McKey v. Dow Chemical Co., supra,* the court explained that the reasons for denying a wife recovery for loss of consortium when her husband suffers an injury are the same as those for denying recovery for mental pain and suffering under the same circumstances. Summarizing those reasons in a shorthand form, the Louisiana court stated,

> We deem it unnecessary to repeat in detail the underlying reasons for the above stated long standing jurisprudential rule. It suffices to state it is based in part on the practicality of justice which protects a tort-feasor from the unreasonable demands of myriads of claimants who sustain no personal injury as a result of the tort. The rationale of this premise is the avoidance of opening a field of litigation which will flood the courts with actions in which practical justice cannot be meted out to both plaintiff and defendant alike. Another basic premise of the rule is that,

under such circumstances, there is no breach of a legal duty toward the party claiming damages.

295 So.2d at 518.

■ On appeal Mrs. Christofferson's sole argument is that, where the Supreme Court of Louisiana has not decided the precise issue at bar, this Court is not *Erie*-bound to apply the law as it is stated by the Court of Appeals of Louisiana. In light of the reasoning of the court in *McKey v. Dow Chemical Co., supra,* however, we are not persuaded that the Supreme Court of Louisiana would allow a wife a cause of action for loss of consortium where her husband is injured by a third party. Accordingly, we decline Mrs. Christofferson's invitation to interpose a holding on the substantive law of Louisiana which is contrary to the law as delineated by the Louisiana Court of Appeals.

Persuasive as the arguments may be that the law is changing, we hold that it has not changed yet, and that the district court was correct in deciding the case on the controlling law.[1]

AFFIRMED.

RICHARD C. FREEMAN, District Judge (dissenting):

As a fully land-locked trial judge, I am somewhat reluctant to disagree with my more experienced brethren of the appellate bench on this admiralty matter. I am even more reluctant to express an opinion of what the admiralty law "should be"; however, as noted by the Supreme Court, " 'Congress has largely left to this Court the responsibility for fashioning the controlling rules of admiralty law . . . .' [citation omitted]." *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 588 n. 22, 94 S.Ct. 806,

---

1. In his dissenting opinion Judge Freeman suggests that our decision retreats from the prior Circuit precedent established in *Skidmore v. Grueninger,* 506 F.2d 716 (5th Cir. 1975). That case is distinguishable from the one at bar. There we simply applied *Gaudet, supra,* which was handed down during the pendency of the *Skidmore* appeal. Like *Gaudet, Skidmore* in-

volved a wrongful death claim, and we held that the decedent's spouse was entitled to recover for loss of consortium. That holding is consistent with our decision here that a claim for loss of consortium cannot be made until the seaman's death, and therefore the wife of a nonfatally injured seaman cannot recover.

816, 39 L.Ed.2d 9 (1974). Given this license, I believe that it is now time to fully extend the remedy sought by appellant to the wives of injured seaman; and I disagree with the other members of this panel that *Gaudet* mandates a different result. Therefore, I must respectfully dissent from the decision to affirm the district court's order of dismissal.

In *Sea-Land Services, Inc. v. Gaudet, supra,* the seaman had already recovered $140,000.00 from the defendant in a personal injury suit. After his death shortly thereafter, his wife then sued seeking recovery for his wrongful death; but the defendant successfully argued in district court that the maritime wrongful death remedy, as first established in *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), should recognize no loss independent of the decedent's claim for his personal injuries. The trial court's dismissal on res judicata grounds was reversed by this court, 463 F.2d 1331 (5th Cir. 1972), and this reversal was affirmed by the Supreme Court. The Court stated that "*Moragne* created a true wrongful-death remedy—founded upon the death itself and independent of any action the decedent may have had for his own personal injuries," *id.* 414 U.S. at 578, 94 S.Ct. at 811; and ruled as follows: "Because the respondent's suit involves a different cause of action, it is not precluded by *res judicata.*" *Id.* In reaching this conclusion, the *Gaudet* Court noted that a *majority* of the state courts, as well as courts interpreting the FELA, had ruled that an action for wrongful death is barred by the decedent's recovery for injuries during his lifetime. Nevertheless, the Court concluded that the guiding principle underlying the "new maritime wrongful-death remedy" was derived from the following principle of admiralty law: " '[I]t better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules . . . .' [citations omitted]." *Id.* at 583, 94 S.Ct. at 814. The Court summarized its conclusions regarding the development of the maritime law as follows:

> Since the policy underlying the remedy is to insure compensation of the dependents for *their* losses resulting from the decedent's death, the remedy should not be precluded merely because the decedent, during his lifetime, is able to obtain a judgment for his own personal injuries. No statutory language or "established and inflexible rules" of maritime law require a contrary conclusion.

*Id.* (emphasis in original). Thus, the question in the instant case is whether the guiding principles of admiralty law, as expanded in *Gaudet* and *Moragne,* should permit a spouse to recover for loss of consortium as a result of injuries to her husband not causing death, or alternatively, whether "established and inflexible rules" of maritime law would preclude such recovery.

After concluding that principles of res judicata would not bar a suit for wrongful death, the *Gaudet* Court turned to defendant's argument that allowing recovery in the case would subject it to "double liability." In considering this argument, the Court found it necessary to identify the specific items of compensable harm encompassed by the maritime wrongful death remedy, ruling that they included the following: "[L]oss of support, services, and society, as well as funeral expenses." *Id.* at 584, 94 S.Ct. at 814. Relying on general wrongful death principles, general maritime law, and cases decided under the Death on the High Seas Act, the Court had little difficulty including support, services and funeral expenses within its catalogue of compensable harm; however, the question of whether or not recovery for loss of "society" should be allowed presented a closer question, particularly in light of the fact that recovery for loss of society is not allowed under the Death on the High Seas Act. The Court concluded that the Death on the High Seas Act did not "pre-empt any additional elements of damage for a maritime wrongful-death remedy which this Court might deem 'appropriate to effectuate the policies of general maritime law.' "

*Id.* at 588 n. 22, 94 S.Ct. at 816. The Court went on to say that the decision to permit recovery for loss of society "aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes," *id.* at 587–88, 94 S.Ct. at 816; however, it is clear that the decision to allow such recovery under general maritime law was not predicated merely on adherence to the [questionably] "clear" majority state rule:[1]

> But in any event, our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the maritime law to show "special solicitude" for those who are injured within its jurisdiction.

*Id.* at 588, 94 S.Ct. at 816.

As a final matter, relying on cases recognizing a cause of action for loss of consortium of an injured, but *living* spouse, the Court rejected defendant's argument that damages for loss of "society" would be unduly speculative and excessive. In fact, the *Gaudet* Court noted that "[D]amages for loss of consortium have been awarded by courts of admiralty as well. *See N. Y. & Long Branch Steamboat Co. v. Johnson,* 195 F. 740 (3d Cir. 1912); 1 E. Benedict, *Admiralty* 366 (6th ed. 1940) . . . . *But see Igneri v. Cie. de Transports Oceaniques,* 323 F.2d 257 (2d Cir. 1963)." *Id.* at 589 n.25, 94 S.Ct. at 817. Loss of society was defined to include "love, affection, care, attention, companionship, comfort, and protection," *id.* at 585, 94 S.Ct. at 815, but to exclude mental anguish and grief. *Id.* at 585 n.17, 94 S.Ct. at 814. As a result, the Court rejected defendant's double liability argument, since "decedent['s recovery] . . . only for his loss of past and future wages, pain and suffering, and medical and incidental expenses . . . [o]bviously . . . did not include damages for the dependents' loss of services or of society, and funeral expenses." *Id.* at 591–92, 94 S.Ct. at 818. The Court ruled, however, that loss of support was arguably included within the decedent's recovery for loss of future wages,

concluding that any resultant potential for double liability can be "eliminated by application of familiar principles of collateral estoppel." *Id.*

Obviously, the *Gaudet* case, coupled with the *Moragne* case, represents a broad expansion of general principles of maritime law into hitherto uncharted waters. It is equally obvious that the *Gaudet* Court neither approved nor disapproved allowing recovery for loss of consortium in admiralty under those same "general principles", given the absence of an established, inflexible contrary rule. *See id.* at 589 n.25, 94 S.Ct. 806. Although I have difficulty in giving emphasis to the development of the majority rule in the states on this issue, I have more difficulty in basing affirmance of the district court's opinion on the isolated statement in *Gaudet* that damages for loss of society "could not accrue until the decedent's death." This statement, although incorporated in the *Gaudet* opinion immediately after the discussion of loss of society, arguably refers more to accrual of the general cause of action for wrongful death itself rather than accrual of the individual items of compensable loss incorporated within that cause of action. Moreover, the Court's discussion of "loss of society" and decisions recognizing an independent action for "loss of consortium" indicates a clear awareness that the latter cause of action, if otherwise permissible, could clearly arise during the decedent's lifetime:

> [J]uries are often called upon to measure damages for pain and suffering, mental anguish in disfigurement cases, or intentional infliction of emotional harm. In fact, since the 17th century, juries have assessed damages for loss of consortium—which encompasses loss of society—in civil actions brought by husbands whose wives have been negligently injured. More recently, juries have been asked to measure loss of consortium suffered by wives whose husbands have been negligently harmed.

1. At the time of the *Gaudet* opinion, 27 of 44 states allowing wrongful death recovery included loss of "society" as an element of that recovery. *Id.* at 587 n.21, 94 S.Ct. 806.

*Id.* at 589–90, 94 S.Ct. at 817. The recovery for "loss of consortium" referred to clearly arises when husbands or wives are negligently "injured" or "harmed" and not merely when they are negligently killed.

In considering the instant claim, this court is writing on a clean slate. *Gaudet* and *Moragne* stand as some indication of the direction of the development of "general maritime law" with respect to extending a remedy to spouses of those injured at sea. If the remedy sought by appellant herein is to be withheld, the decision should be based on more than the isolated statement from *Gaudet* cited above. And if this court is to retreat from the position it has taken in *Skidmore v. Grueninger*, 506 F.2d 716 (5th Cir. 1975) (husband may recover for loss of consortium in admiralty wrongful death action), that case should be discussed and distinguished, if possible. The result in *Skidmore* has been interpreted as extending a cause of action for loss of consortium to the wife of an injured seaman, irrespective of whether the seaman dies or lives:

> [S]ince we can perceive no logical, sound or reasonable basis to differentiate between the case where the husband is killed, as contrasted to injured, in respect to the wife's entitlement to recover for loss of consortium, we conclude that *Igneri* has been overruled by *Sea-Land Services* as construed by *Skidmore.*

*Pesce v. Summa Corp.,* 54 Cal.App.3d 86, 126 Cal.Rptr. 451 (1975). I agree fully with the conclusions of the California court.

2. In reaching this conclusion, I express no opinion on the outcome of this case under the Jones Act and FELA; or whether, in light of *Gaudet,* the Louisiana courts would join the weight of authority and depart from their prior rule denying recovery for loss of consortium. *See, e. g.,*

In considering the federal opinions, *N. Y. & Long Branch Steamboat Co. v. Johnson, supra,* apparently stands by itself in recognizing a potential cause of action for loss of consortium under earlier maritime law. Moreover, the trial court in *Igneri* distinguished *Johnson* on the ground that it was predicated on the husband's right to recover damages for loss of his wife's services under the common law action of *per quod consortium amisit,* which arose in light of a wife's general common law disability to sue in her own name. *See* 207 F.Supp. at 237–38. Apparently, recovery for lost "services" did not include lost "love and affection." *Id.* Now, however, the result in *Johnson* has been reaffirmed by this court in *Skidmore* ; and it may hardly be argued that the *Skidmore* decision was based on the common law causes of action. Similarly, in *Gaudet,* the Supreme Court has included "love, affection, care, attention, etc." within the elements of damages recoverable for "loss of society", thereby arguably overruling prior cases to the contrary. *See, e. g., Canal Barge Co. v. Griffith,* 480 F.2d 11, 31 (5th Cir. 1973) (applying *Igneri* to exclude recovery for "survivor's grief", including "lost love and affection"), *vacated in part,* 513 F.2d 911 (1975) (applying *Gaudet* ).

Given the development of the general maritime law, as explained in *Gaudet,* coupled with recognition of a cause of action for loss of consortium resulting from maritime injuries by a "clear majority" of the states and by this court in *Skidmore,* I must disagree with the other members of this panel.[2]

*Hood v. Dun & Bradstreet, Inc.,* 486 F.2d 25, 31 (5th Cir. 1973), cert. denied, 415 U.S. 985, 94 S.Ct. 1580, 39 L.Ed.2d 882 (1974) (federal courts must adhere to preexisting state law absent a compelling reason to do otherwise).