Aline Edwards STRETTON,
Plaintiff-Appellant,

v.

PENROD DRILLING COMPANY,
Defendant-Appellee.

Beatrice C. SHIRLEY,
Plaintiff-Appellant,

v.

PENROD DRILLING COMPANY,
Defendant-Appellee.

Glenda Lees NEALY, Plaintiff-Appellant,

v.

FLUOR DRILLING SERVICES, INC.,
Defendant-Appellee.

Nos. 81–3694, 81–3701 and 81–3713.

United States Court of Appeals,
Fifth Circuit.

March 28, 1983.

Wilson M. Montero, Jr., Metairie, La., for plaintiffs-appellants.

Hebert & Abbott, Dean A. Sutherland, New Orleans, La., for defendants-appellees.

Before WISDOM, RANDALL and TATE, Circuit Judges.

WISDOM, Circuit Judge:

In each of these three cases, consolidated for argument on appeal, the spouse of an injured seaman filed suit against her husband's former employer for the loss of society that she sustained as a result of her husband's injuries. The district court, 524 F.Supp. 789, dismissed these claims on the ground that two recent decisions recognizing the existence of a claim for loss of society under general maritime law should not be applied retroactively. *American Export Lines, Inc. v. Alvez*, 1980, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284, and *Cruz v.*

*Hendy International Co.,* 5 Cir.1981, 638 F.2d 719. We affirm.

## I.

This appeal involves the basic question whether the judicial creation/recognition of a new cause of action should be applied retroactively or prospectively. The immediate question is whether the spouse of an injured seaman has a claim against her husband's employer for loss of society that she sustained as a result of her husband's injuries—when the claim arose before the Supreme Court decided *American Export Lines, Inc. v. Alvez,* 1980, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284. In that case, for the first time, the Supreme Court recognized the existence of a spouse's cause of action for loss of society. Before that case was decided, the Court of Appeals for this circuit, in line with other federal courts of appeals, had denied the existence of such a cause of action. *Christofferson v. Halliburton Co.,* 5 Cir.1976, 534 F.2d 1147. After *Alvez,* this Court followed the Supreme Court in rejecting the contention that a spouse had no cause of action for loss of society arising out of an injury to her seaman-husband. *Cruz v. Hendy International Co.,* 5 Cir.1981, 638 F.2d 719.

The retroactivity or prospectivity of an overruling decision or a decision overturning an apparently established principle of law is a fascinating subject, well worth a small judicial excursion. Mr. Justice Cardozo was, perhaps, the first to discuss the problem. In 1921, in his Storrs Lectures on the Nature of Judicial Process, he made the point: "When the hardship is felt to be too great or to be unnecessary, retrospective operation is withheld".[1] Walter V. Schaef-fer, a former Chief Justice of the Supreme Court of Illinois and one of our most respected jurists, developed Cardozo's thesis in a monumental "Benjamin Cardozo Lecture" in 1967, "The Control of 'Sunbursts': Techniques of Prospective Overruling".[2] Many other judges and commentators, interested in the jurisprudential aspects of the problem, have written on the subject[3]. Perhaps, as have many commentators suggested, the impulse toward making decisions retroactive goes back to Blackstone's notion that the law is now and always has been in the sky, perhaps an omnipresence, waiting to be discovered.[4] The law is now beyond that illusion. Or is it?

We need not take a long excursion. All parties agree that *Chevron Oil Co. v. Huson,* 1971, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, sets the standard to determine whether to apply retroactivity in these cases. Essentially, *Huson* requires a balancing test. Here, we affirm the district court's judgment. We hold that the scales weigh in favor of not applying *Alvez* and *Cruz* retroactively. We hold, therefore, that the plaintiffs' claims must be rejected.

## II.

Carl Stretton, Ezell Shirley, and George Nealy were seriously injured November 8, 1975, July 22, 1974, and August 18, 1975, respectively, while employed as seamen (floorhands). Each filed an action against his employer alleging negligence and unseaworthiness. Penrod Drilling Company, the defendant in two of the cases, settled with Stretton for $650,000 and with Shirley for $350,000. Fluor Drilling Services, Inc. settled with Nealy for $285,000. In September

---

1. B. Cardozo, The Nature of the Judicial Process 146–49 (1921).

2. W. Schaeffer, The Twenty-Fourth Annual Benjamin Cardozo Lecture delivered before the Association of the Bar of the City of New York, "The Control of 'Sunbursts': Techniques of Prospective Overruling" (April 13, 1967), *reprinted in* Schaeffer, "The Control of 'Sunbursts': Techniques of Prospective Overruling", 42 N.Y.U.L.Rev. 631 (1967).

3. *See* Beytagh, Ten Years of Non-retroactivity: A Critique and a Proposal, 61 Va.L.Rev. 1557 (1975); Currier, Time and Change in Judge Made Law: Prospective Overruling, 51 Va.L. Rev. 201 (1965); Rossum, New Rights and Old Wrongs: The Supreme Court and the Problem of Retroactivity, 23 Emory L.J. 381 (1974); Annot., 10 A.L.R.3d 1371 (1966 & Supp.1982).

4. *See* Currier, supra note 3, at 205–206; Rossum, supra note 3, at 386–390; Annot., supra note 3, at 1382–84.

1980 each of the wives filed suit against her husband's employer for the loss of society that she sustained as a result of the injuries to her husband caused by the employer's negligence and failure to provide a seaworthy vessel.

Penrod and Fluor answered that the plaintiffs failed to state a cause of action and were barred from bringing suit under the doctrine of laches. The district court consolidated these cases for the purpose of considering the defendants' motions for summary judgment. Fluor and Penrod urged summary judgment on the grounds that the recent decisions recognizing a cause of action for loss of society under the general maritime law should not be applied retroactively, that the plaintiffs' claims are barred under the maritime theory of laches, and that the releases signed by the plaintiffs' husbands also released their wives' claims. The district court granted the motions of Penrod and Fluor for summary judgment, holding that the claim for loss of society would not be applied retroactively and that the claims were barred by laches.[5]

On appeal, the plaintiffs contend that the district court erred in failing to give general retroactive application to *Alvez* and *Cruz.* The plaintiffs also contend that their claims are not barred by the doctrine of laches. Penrod and Fluor contend that general retroactive application of *Alvez* and *Cruz* is not warranted because it would produce hardship and inequity. They also contend that the district court correctly determined

that the plaintiffs' cases were barred by the doctrine of laches.[6]

### III.

At the time the husbands of the plaintiffs in this case were injured, courts did not recognize the existence of a loss of society claim in favor of the spouse of a non-fatally injured seaman. *See Christofferson v. Halliburton Co.,* 5 Cir.1976, 534 F.2d 1147. The Supreme Court recognized the existence of this action in *Alvez,* which held that a wife of a longshoreman injured aboard a vessel in state territorial waters had a loss of society claim under the general maritime law.[7] The Supreme Court defined "society" as "a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection". *Alvez,* 446 U.S. at 275 n. 1, 100 S.Ct. at 1674 n. 1, 64 L.Ed.2d at 287 n. 1. This Court followed *Alvez* in *Cruz,* and held that "the spouse of a seaman whose nonfatal injuries are attributable to the unseaworthiness of a vessel has a general maritime cause of action for loss of his society". *Cruz,* 638 F.2d at 721. *Cruz* partially overruled *Christofferson,* which had been the leading case to reject recovery for loss of society when nonfatal injuries were involved.

### IV.

All parties agree that *Chevron Oil Co. v. Huson,* 1971, 404 U.S. 97, 92 S.Ct. 349, 30

---

**5.** The district court also held that the releases of the injured husbands did not release the claims of their wives.

**6.** We do not consider the issue of laches because of our holding that *Alvez* and *Cruz* are not to be given general retroactive operation.

**7.** The plaintiffs contend that this Court has indicated that *Alvez* will apply retroactively in *Mallard v. Aluminum Co. of Canada, Ltd.,* 5 Cir.1981, 634 F.2d 236. In a footnote, the *Mallard* Court stated that the per curiam opinion of *Blanchard v. Teledyne Movible Offshore, Inc.,* 5 Cir.1980, 612 F.2d 971, was an indication that *Alvez* would be applied retroactively. The *Blanchard* Court, however, simply set aside a judgment dismissing a loss of society claim in the light of the Supreme Court's decision to

grant a writ of certiorari in the *Alvez* case. The issue of general retroactive application of *Alvez* and *Cruz* was not before the Court. In addition, the issue in *Mallard* would not have been one of general retroactive application, but one of a more limited retroactive application given to litigants whose cases are pending when a decision is made. *See* n. 16 and accompanying text. The *Mallard* Court also did not consider the factors that the Supreme Court set forth in *Chevron Oil Co. v. Huson,* 1971, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, to determine if it is appropriate to apply a new rule of law retroactively. We reject the plaintiffs' contention that the issue of general retroactive application has been decided already.

L.Ed.2d 296,[8] sets the standard to determine if *Alvez* and *Cruz* are to be given retroactive application. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 1982, —— U.S. ——, ——, 102 S.Ct. 2858, 2880, 73 L.Ed.2d 598, 625–26. In *Huson,* the Court stated that a decision must establish a new principle of law, either by overruling past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed, to be applied nonretroactively. The Court also stressed that the history, purpose, and effect of the rule in question must be considered to determine if retroactive application will further or retard operation of the rule. Finally, the Court considered the equities of the matter to determine if nonretroactive application is necessary to avoid injustice or hardship.

Two of the *Huson* factors favor nonretroactive application. On the first *Huson* factor, nonretroactivity is called for because *Alvez* and *Cruz* established a new principle of law "by overruling clear past precedent." *Huson,* 407 U.S. at 106, 92 S.Ct. at 355, 30 L.Ed.2d at 306. *Alvez* and *Cruz* overruled *Christofferson,* a well-established precedent in this circuit holding that a spouse of a non-fatally injured seaman could not recover for loss of society. The plaintiffs argue that *Alvez* and *Cruz* were foreshadowed by *Moragne v. States Marine Lines, Inc.,* 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, which held that general maritime law affords a cause of action for the wrongful death of a longshoreman killed in navigable waters, and by *Sea-Land Services, Inc. v. Gaudet,* 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, which allowed a longshoreman's widow to recover for loss of society in a wrongful death action. The plaintiffs' argument, however, ignores that the *Christofferson* decision came after *Moragne* and *Gaudet* and that no cause of action for loss of society based on unseaworthiness existed in admiralty at that time. *See Christofferson,* 534 F.2d at 1149; *see also Alvez,* 446 U.S. at 280, 100 S.Ct. at 1676, 64 L.Ed.2d at 290.

Nonretroactive application is also called for on the *Huson* factor which requires an examination of the equities to determine if injustice or hardship will result if retroactive application is given. We conclude that a retroactive application of *Alvez* will cause prejudice to Penrod and Fluor by upsetting their justifiable reliance on the prior law. Penrod and Fluor did not obtain releases from the spouses of the injured seamen nor did they insure against claims for loss of society because the prior law did not warrant these precautions. Penrod and Fluor point out that a vast amount of liability for loss of society claims has built up over the years. If we applied *Alvez* and *Cruz* retroactively, this large liability that maritime employers could not have anticipated and covered by insurance would be placed on them in a short period of time.

For those employers whose insurance did cover these risks, the prejudice from retroactive application will be suffered by the insurance companies. Insurers would not have charged adequate premiums because their rates would have reflected that maritime law did not allow loss of society claims when the policies were signed. Their reliance on the law will cause them loss. There is also the possibility that current policyholders will have to pay higher than compensatory premiums to make up for losses caused by past, inadequate premiums even though the policyholders may be new and not connected with the claims in question.

Another source of hardship to Penrod and Fluor concerns their defense of loss of society claims. Penrod and Fluor had no incen-

---

**8.** The *Huson* Court held nonretroactive a decision applying a state statute of limitation to suits for personal injury brought by a worker covered by the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 et seq. (1964). The Court held that nonretroactivity was appropriate because it was inequitable to hold that Huson slept on his rights at a time when he could not have known the time limitation imposed upon him by state law and because denying compensation would thwart the compensatory purpose of the Lands Act, which absorbed state law into federal law to provide injured employees comprehensive and familiar remedies.

tive to undertake investigation or discovery of the injuries suffered by the wife when the loss of society first occurred because they relied on the earlier case law. Investigation into the husbands' claims was not sufficient because a loss of society claim is separate and distinct from a seaman's personal injury claim. Moreover, Penrod and Fluor would not have investigated the husbands' claims as extensively as they would have because a settlement was reached in each case.

We conclude that it is unfair to saddle employers with a liability that they had no incentive to insure against or to settle at the time of the mishap. The plaintiffs' argument that imposing liability would have created no new risks on employers is misguided.[9] Under tort theory, the risk of increased liability for loss of society claims would have made employers seek safeguards to reduce their exposure if it was cost-effective to do so.[10] In this case, Penrod and Fluor would have taken additional precautions if they had known they were to bear increased liability judgments for loss of society claims. Retroactive application prejudices maritime employers because they would have had an incentive to reduce their exposure if they could have foreseen that the law would change.[11] On the *Huson* factor requiring us to consider the equities of retroactive application, we conclude that the hardships and prejudice that would be placed on Penrod and Fluor militate strongly against general retroactive application of *Alvez* and *Cruz.*

The final *Huson* factor requires us to consider the history, purpose, and effect of the rule. Of the three *Huson* factors, this factor is the only one favoring retroactive application. The clear purpose of *Alvez* and *Cruz* is to compensate a seaman's spouse for injury to the seaman, and the *Alvez* Court relied on the canon of maritime law that "it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to·withhold it by established and inflexible rules". *Alvez,* 446 U.S. at 281–82, 100 S.Ct. at 1677–78, 64 L.Ed.2d at 291.[12] The remedial purpose of *Alvez* and *Cruz* would be frustrated with respect to a limited class of plaintiffs injured prior to *Alvez* if their holdings are not applied retroactively. We note, however, that no compelling policy of the maritime law, such as the desire for uniformity that led this Court to apply *Moragne* retroactively in *In*

---

9. The plaintiffs contend that retroactivity is equitable because it creates no new risks the defendants could have guarded against, but merely subjects employers to additional liability. The plaintiffs contend that the only possible inequity in this case would be to deny compensation for their loss of society claims simply because their injury occurred prior to the *Alvez* decision.

10. Employers will have incentive to take precautions if they can do so cost-effectively under either a negligence or a strict liability standard. *See* R. Posner, Economic Analysis of Law § 4.15 (1972). In this case, Fluor and Penrod would have added additional safeguards to prevent injuries if there had existed a safety precaution that would have cost less than the expected cost of the accident it would prevent. The *Alvez* decision, by making accidents more costly to maritime employers, should have induced employers to add additional safeguards if doing this would be cheaper than paying out the loss of society claims that those safeguards would prevent.

11. This fact distinguishes this case from the Court's opinion in *In re S/S Helena,* 5 Cir.1976, 529 F.2d 744, which applied *Moragne* retroactively. *See* n. 13. Prior to *Moragne,* admiralty courts could recognize the applicability of state wrongful death statutes for accidents in state territorial waters. *See Western Fuel Co. v. Garcia,* 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210. Maritime employers, therefore, had an incentive to insure against these claims, settle them with all the affected parties, and to take the precautions that the increased exposure due to wrongful death actions justified. The retroactive application of *Moragne* prejudiced maritime employers far less than would the retroactive application of *Alvez* and *Cruz.*

12. The *Alvez* Court also recognized that a clear majority of states permit a wife to recover damages for loss of consortium from personal injury to her husband. The decision in *Cruz* recognized that there was no reason to distinguish between types of workers, such as longshoreman and seaman, in authorizing damages for loss of society.

re *S/S Helena,* 5 Cir.1976, 529 F.2d 744,[13] would be furthered by retroactive application. Nonretroactive application also will provide a logical beginning point for enforcement of the new cause of action.

Not all of the *Huson* factors favor nonretroactive application of *Alvez* and *Cruz.* It must be conceded that if the purpose of the cause of action is to compensate the spouses of injured seamen, that purpose is furthered by allowing a retroactive application of *Alvez* and *Cruz.* On balance, however, the clear overruling of past precedent that Penrod and Fluor relied on justifiably and the hardship that Penrod and Fluor would suffer from retroactive application call for a nonretroactive application of *Alvez* and *Cruz.* As the Supreme Court has stated, "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis for avoiding the injustice or hardship by a holding of non-retroactivity." *Cipriano v. Houma,* 1969, 395 U.S. 701, 706, 89 S.Ct. 1897, 1900, 23 L.Ed.2d 647, 652, *quoted*

in *Huson,* 404 U.S. at 107, 92 S.Ct. at 355, 30 L.Ed.2d at 306.[14] Because of the "hardship and injustice" that would result otherwise, we hold that *Alvez* and *Cruz* should not be given general retrospective application.[15]

We also hold that *Alvez* and *Cruz* are to be applied to cases that were pending on appeal at the time these decisions were rendered. *See Linkletter v. Walker,* 1965, 381 U.S. 618, 621–22, 85 S.Ct. 1731, 1733–34, 14 L.Ed.2d 601, 604. This application of *Alvez* and *Cruz* would prevent the inequitable result of punishing those who challenged the pre-existing case law but who were moving more slowly than Mrs. Alvez through the appellate process.[16] Retroactive application should not be given otherwise. We affirm the district court's grant of summary judgment in favor of Penrod and Fluor on the ground that *Alvez* and *Cruz* are not to be given general retroactive application.

The judgment is AFFIRMED.

**13.** The Court in the *S/S Helena* held that *Moragne* should be applied retroactively to provide a cause of action under the general maritime law for wrongful deaths. The Court applied *Moragne* retroactively to ensure that its primary purpose—to " 'assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts' "—would not be frustrated. *In re S/S Helena,* 529 F.2d at 748 (quoting *Moragne,* 398 U.S. at 401, 90 S.Ct. at 1788, 26 L.Ed.2d at 357).

**14.** One of the difficulties in applying the *Huson* test is that the Supreme Court has given little guidance on what weight each of the three *Huson* factors should be given. *See* Beytagh, supra note 3, at 1605–06. This Court stated in *S/S Helena* that "the purpose of the rule should be given greater weight than the extent to which the parties relied on the law that existed before that rule was announced." *In re S/S Helena,* 529 F.2d at 748. We conclude that the great injustice to Penrod and Fluor from retroactive application more than balances out the partial frustration caused by nonretroactive application on the compensatory purpose of *Alvez* and *Cruz.* We note that in *S/S Helena,* a holding of non-retroactive application would have resulted precisely in what *Moragne* was intended to prevent: the enforcement of the maritime law of negligence and unseaworthiness through the state remedial statute and the

related state law. *In re S/S Helena,* 529 F.2d at 748.

**15.** The Supreme Court has often considered the effect of retroactivity on the administration of justice as a relevant factor in determining the retroactivity question. *See Gosa v. Mayden,* 1973, 413 U.S. 665, 682–83, 93 S.Ct. 2926, 2937–38, 37 L.Ed.2d 873, 889; *DeStefano v. Woods,* 1968, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308; *Linkletter v. Walker,* 1965, 381 U.S. 618, 637–38, 85 S.Ct. 1731, 1741–43, 14 L.Ed.2d 601, 613. We do not consider this factor to be as important as the three factors given in *Huson,* but we conclude that the effect of retroactivity on the administration of justice favors nonretroactive application. As the district court recognized, a flood of cases involving both the doctrines of laches and collateral estoppel will come into the courts if *Alvez* and *Cruz* are applied retroactively. Nonretroactive application would prevent this flood of cases and supply a clear starting point for loss of society claims.

**16.** It is in this context that *Mallard v. Aluminum Company of Canada, Ltd.,* 1981, 5 Cir. 634 F.2d 236, should be read. Mrs. Mallard was aware of the pre-existing case law and was actively challenging the viability of that law. Under our holding, parties in the position of Mrs. Mallard would be entitled to present their claims for loss of society.