Felipe COLON, Plaintiff,

v.

GULF TRADING CO., Defendant and
Third-Party Plaintiff,

v.

FARRELL LINES, INC. and Prudential
Lines, Inc., Third-Party Defendants.

Civ. No. 79–2348CC.

United States District Court,
D. Puerto Rico.

Dec. 22, 1983.

Harry A. Ezratty, San Juan, P.R., for plaintiff.

Antonio M. Bird, Jr., Bird & Bird, San Juan, P.R., for defendant and third-party plaintiff.

J. Ramón Rivera-Morales, Jimenez & Fuste, San Juan, P.R., for third-party defendants.

## OPINION AND ORDER

CEREZO, District Judge.

This action in admiralty was brought by a seaman to recover damages suffered as a result of an alleged asbestos dust intoxication contracted during his employment aboard defendant's vessel. The complaint asserts a claim of negligence under the Jones Act, 46 U.S.C. Sec. 688, and a claim of unseaworthiness under general maritime law. On August 11, 1981 leave to amend was sought to add a cause of action for loss of society on behalf of plaintiff's wife and son allegedly derived from *Cruz v. Hendy International Co.*, 638 F.2d 719 (5th Cir.1981) where the Fifth Circuit, relying on the Supreme Court's decision in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) overruled itself and held that the wife of a seaman injured in territorial waters could recover for loss of society under the general maritime law if the injuries were the result of some unseaworthy condition. Defendant opposed the request to amend challenging the applicability of the *Cruz* decision in our Circuit in view of the decisions in *Do Carmo v. F.V. Pilgrim I. Corp.*, 612 F.2d 11 (1st Cir.1979) and *Barbe v. Drummond*, 507 F.2d 794 (1st Cir.1974) which, it contends, limit the availability of non-pecuniary damages to seamen for injuries suffered in the high seas. Defendant also argues that regardless of the existence of said remedy, it is barred

by laches even assuming that 1978–1979 were deemed to be the period the injury was inflicted. The Court referred these matters to the United States Magistrate who recommended that the amendment be allowed. Shortly thereafter, the Court requested memoranda discussing whether *Cruz*, if considered as an acceptable precedent in support of the new claim, should be given only prospective application (as was done by the Fifth Circuit in *Stretton v. Penrod Drilling Co.*, 701 F.2d 441 (5th Cir.1983)). The parties having submitted their memoranda, their comments and objections to the Magistrate's Report and Recommendation, the Court hereby adopts the Magistrate's findings and recommendations with the observations made in this Opinion and Order. We also rule that the judicially fashioned remedy permitting loss of society claims for injuries due to unseaworthiness under the general maritime law should not be limited to a prospective application for the reasons which will be expressed herein.

As the Supreme Court indicated in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971) the test to determine whether the application of a judicial decision should be limited prospectively requires a balancing of three factors: (1) how "new" or unexpected was the decision, that is, whether it established a new principle of law either by overruling past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) the impact of retroactive application on the operation of the rule in question considering its history and purpose and (3) the general effects in terms of possible inequities, hardships or injustice of retroactive application. In *Stretton v. Penrod Oil*, the Court found that, although the second factor weighed favorably in support of retroactive application, the other two factors favored nonretroactivity and outweighed any considerations urged by the second factor. Judge Wisdom pointed out that *Cruz* had overruled *Christofferson v. Halliburton Co.*, 534 F.2d 1147 (5th Cir.1976), a "well-established precedent in /their/ circuit holding that a spouse of a non-fatally injured seaman could not recov-

er for loss of society." *Stretton* at 444. The *Christofferson* opinion, in turn, had been issued after the Supreme Court's decisions in *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) and *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) which opened the door for non-pecuniary damages under the general maritime law and which appeared to rely on this font of law to favor broad concessions of remedies to those who ventured the dangers of the seas. Thus, the Fifth Circuit considered the first factor to weigh heavily for non-retroactivity. It was patently clear to the court that, at least in their circuit, the *Cruz* decision had established a new principle of law by overruling past precedent. In turn, the court also found that reliance on the *Christofferson* precedent as the state of the law in the Fifth Circuit could have led defendant-employers to forsake insurance coverage for this type of loss. In particular, the court emphasized that defendants Penrod Drilling Co. and Fluor Drilling Services, Inc. would suffer undue hardship because they had already settled their cases with the injured seamen for substantial amounts but, because of their justifiable reliance on the prior law, had found it unnecessary to obtain releases from the spouses of the injured seamen and had been under the impression that they had settled amiably all possible liability. *Stretton* at 444 and *Nealy v. Fluor Drilling Services, Inc.*, 524 F.Supp. 789, 793 (W.D.La., 1981). The court understood that the possible inequity in depriving spouses of seamen injured prior to the *Alvez* and *Cruz* decisions of a loss of society claim was outweighed by the combination of the other two factors which favored non-retroactivity; *Stretton* at 446. It stated that the possible adverse impact of retroactive application on the administration of justice, i.e., a flood of litigation reopening settled claims and cases and presenting thorny issues of laches and collateral estoppel, although not as important as the other three factors, may be relevant to the analysis and also pointed towards prospective application of the decision.

Our Circuit recently had the opportunity to explore the dilemma of retroactive versus prospective application of judicial decisions. In *Simpson v. Dir. Office of Workers' Comp. Programs*, 681 F.2d 81 (1st Cir.1982) the Court ruled that the Supreme Court's decision in *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962), clarifying that the marine-but-local rule which permitted state workmen compensation laws to apply to maritime work of a traditionally local concern (i.e., shipbuilding) did not preclude application of the Longshoremen's Act to said type of work notwithstanding Section 3(a) of the Act,[1] was to be applied retroactively. Like the Court in *Stretton*, our Circuit conducted the *Huson* three factor analysis but cautioned from the outset that retroactive application of judicial decisions is the rule and not the exception, a consideration that was practically ignored in *Stretton*. Upon discussing the presumption that all judicial decisions are generally applied retroactively it said:

> This century has seen the Supreme Court establish that both state courts and federal courts, may legitimately conclude that justice requires a decision to be applied non-retroactively. But, at least in the federal courts, the strong presumption has remained in favor of retroactivity. This presumption follows in part from the fact that every federal decision applies "retroactively" to a set of facts that has already taken place. The presumption promotes uniform treatment of litigants, since the reasons that lead the court to make such a "retroactive" decision should apply with equal force to other similarly situated litigants, no matter when their cases arise. Most court-made law is interstitial, constrained by previously enacted principles of positive constitutional and statutory law, and merely clarifies points that were previously open to debate. It is applied retroactively, since that is usually the fairest, least arbitrary way to proceed. *Simp-*

*son* at 84, 85. (Citations and footnotes omitted)

The court also considered that the *Huson* test should be applied in light of general patterns in society instead of confining it to the specific, narrow facts of the case before it. *Id.* at 85–86. It viewed the *Huson* factors not as "discrete, disembodied tests, but rather (as) three perspectives on the central question of retroactivity: was reliance on a contrary rule so justified and the frustration of expectation so detrimental as to require deviation from the traditional presumption of retroactivity. The answer to this central question, found in an analysis of the state of the law at the time of the *Calbeck* decision, led the court to conclude that reliance on the proposition that the marine-but-local doctrine precluded resort to federal jurisdiction would have been imprudent given the legislative history of the Longshoreman's Act favoring coverage and the absence of clear precedent upholding that proposition. The reliance factor was tied in with defendant's allegations of hardship, essentially, a lack of proper insurance coverage for liability under the federal law, but, unlike the Fifth Circuit in *Stretton*, the Court did not give much weight to the allegations of hardship in view of the absence of clear legal foundation to justify relying on the rejected theory. A key element of our analysis lies then in determining whether the state of the general maritime law justified assuming that the spouses of injured seamen could not successfully initiate actions for loss of society. Finding the key to the analysis, does not always result in unlocking the doors to safe havens of legal certainty.

The first difficulty encountered lies in determining which of the decisions, *Alvez* or *Cruz*, is to be considered the one that set the sharp break with prior law or that established the "new" point in law. *Alvez* is distinguished by defendant because it involved a longshoreman injured in territorial waters while *Cruz*, although a sea-

---

1. Section 3(a), 33 U.S.C. Sec. 903(a) provides in part that "/c/ompensation shall be payable under this Act in respect of disability or death of an employee but only if ... recovery ... through workmen's compensation proceedings may not validly be provided by State law."

man's claim, is said to be inapplicable for there the injury occurred in territorial waters while here it may have occurred on the high seas.[2] In this sense then, the present opinion and order would be the one really setting forth the new concept of law since it would be the only one specifically addressing matters that were not ruled upon in other decisions.

A review of the cases reveals that neither *Alvez, Cruz* nor our present holding constitute the sharp definite "break" in the law usually associated with a genuine retroactive-prospective application analysis. Although the lack of a clearly discernible deviation in the law may not be a threshold requirement to bring into play the *Huson* analysis, *see: Simpson,* at p. 87 n. 10, the fact that the change in the law is difficult to perceive as occurring at a specific point in time suggests the weakness of arguing that the law on which defendant relied on to commit itself was sufficiently well established so as to justify relying on it for commitments which will purportedly be affected. In the present case, regardless of whether we situate ourselves in 1980 (*Alvez*), 1981 (*Cruz*) or at the present moment in order to conduct the analysis,[3] the general maritime law had made its crucial pivot long before *Alvez.* In fact, *Alvez* and *Cruz* may well have been the last pebbles to roll after the avalanche had already swept the terrain.

The general outlines of our ruling today and those in *Alvez* and *Cruz* had been substantially traced beforehand by the landmark decisions of *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) and *Sea-Land Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974). The *Moragne* decision is really the one that most aptly wears the badge of innovator that could justify a stronger argument of hardship due to reliance on prior law for it altered radically a doctrine that had been standing for more than seventy years. The Court in *Moragne* recognized that the precise remedies available by the new cause of action would be developed by its "further sifting" through the lower courts. *Id.* 398 U.S. at 408, 90 S.Ct. at 1791. This in a way was a clear indication to the legal community that constant flux following *Moragne* was to be expected. And what should have been taken by defendant as a clear reading of the direction in which the wind would blow was forecasted in *Moragne* when the Court stated that the remedy was not a statutory creation but rather judge-made and that the shape of the new remedy was to be guided by the principle of maritime law that " 'it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy when not required to withhold it by established and inflexible rules.' " *Id.* at 387, 90 S.Ct. at 1781. The first major "sifting" of the remedy by the Supreme Court occurred in *Gaudet* where it explicitly indicated how the damages for the wrongful death remedy were to be calculated. *Id.* 414 U.S. at 601, 94 S.Ct. at 823. The Court in *Gaudet* again commented on the need to carve out the remedy with humanitarian strokes and rested part of its analysis on the importance of aligning the maritime remedy to the development of the law among the states. *Id.* at 587–88, 94 S.Ct. at 816–17. When contesting the argument that loss of society damages would be difficult to measure, the Court referred to how courts had long before dealt with the loss of consortium remedy available to the husband in the general common law and in some admiralty

**2.** The early stage of factual development of this case, coupled with the type of injury involved, prevents us from taking any position on this matter. The record may eventually show that the injury occurred on the high seas or in territorial waters or it may be altogether impossible to locate the origin before or beyond a certain marine league. We note for future reference the approach taken in *Smith v. Ithaca Corp.,* 612 F.2d 215, 226 (5th Cir.1980) in dealing with a similar situation. In any event, aside from the reference to the discussion above, the relevance of such geographical distinctions to our case, where fortunately there has been no fatality to date, is hard to perceive considering our analysis of the applicable law.

**3.** The First Circuit's rejection of the "atomistic" approach in the retroactivity analysis prevents us from examining the state of the law at the alleged onset date of the injuries (1978–79). *See: Simpson,* at 86 n. 8.

cases. In fact, the Court even mentioned how juries were. now assessing loss of consortium suffered by wives whose husbands had been negligently injured. *Id.* at 590, 94 S.Ct. at 817. Nowhere in the decision does the Court even hint that the general maritime law might never permit recovery of the type here in question.

In view of the expression in *Moragne* as to the shaping of the remedy and considering *Gaudet's* expansion of it again on humanitarian lines, it should have been clear to defendant and to those similarly situated that if there were no 'established and inflexible' rule limiting the right of an injured seaman's relatives to recover for loss of society, the judicial crafting of this remedy was more than a mere possibility and that it would only be a matter of time before the courts devised such a remedy. As the Magistrate pointed out, defendant's characterization of the *Do Carmo* opinion which dealt solely with the lack of such a remedy under the Jones Act and of the *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) decision, also limiting said remedy in actions under the Death on the High Seas Act (DOHSA), as controlling and dispositive of the instant case is misplaced and certainly cannot constitute grounds to support reliance on the erroneous conclusion that it derived from these cases. Defendant should have sighted the general maritime law of unseaworthiness as it was being. charted by the Supreme Court since the action, besides being brought under the Jones Act, was also channeled as one for unseaworthiness. *See: Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The importance attributed to certain facts in the pre-*Alvez* and *Cruz* decisions such as the type of worker or the place of injury as determinative of the extent of the remedy's development can be justified only if there were grounds to assume that their presence would divert the flow of general maritime law. For example, if a seaman died in the high seas this fact would acquire relevance as determinative in precluding the rights offered by the general maritime law for, as indicated by the Court in *Higginbotham,* the

DOHSA would curtail application of the general maritime law to such a factual situation; or, using the phraseology of *Moragne*, the remedy would have to be withheld because of the established rule in DOHSA. In the case of defendant, however, its argument of reliance appears to be based on the assumption that the future development of the remedy would be limited solely to the facts present in the pre- *Alvez* and *Cruz* decisions, yet it has never indicated how these other facts, present in our case but which were not before the courts in the other cases, would bring into play a Congressional mandate or other 'established and inflexible' rule limiting resort to the general maritime law so as to conclude that the decisional law would never expand into such variations of the *Moragne/Gaudet* remedy. The reliance factor which was given so much weight by Judge Wisdom in *Stretton* was greatly influenced by the existence of the *Christofferson* decision clearly spelling out in no uncertain terms that in the Fifth Circuit there would be no loss of society claim under the general maritime law of unseaworthiness for spouses of injured seamen. However, in our circuit no such clear dictate has ever existed. *Do Carmo* had to do with the availability of said claim under a Jones Act negligence count. The issue of whether the injured seaman's spouse had this relief available under the general maritime law was never raised, discussed or ruled upon in *Do Carmo*. And *Barbe v. Drummond,* aside from its discussion of the DOHSA preclusion which is inapplicable to the factual circumstances of our case, only serves to suggest that the First Circuit as early as 1974 picked up the message spelled out in *Moragne* and recognized that there could be remedies and actions under general maritime law existing separately and providing relief wherever the federal maritime legislation had failed to provide a statutory remedy (i.e.: the 'established inflexible' rule embankment on the flow of general maritime law announced in *Moragne*). Finally, the pattern present in the judicial development of general maritime law of adopting those

remedies that a great majority of the states had already developed for similar situations, as was the case in *Moragne* and *Gaudet,* should have also alerted defendant to the growing acceptance of the loss of society claim in other jurisdiction, *see: Alvez* 446 U.S. at 284 n. 11, 100 S.Ct. at 1679 n. 11, as well as to the fact that said claim had long been recognized in Puerto Rico. We are aware that the charts of general maritime law drawn by the decisional process may often lead into turbulent waters and tortuous channels. Yet these dangers, inherent in any judicially developed cause of action, are precisely part of the considerations which must be taken into account when making decisions arising from such flux in the law. In the case of the claim for loss of society, the Court had left many beacons which cast light as to the general direction which this situation would take. To set one's course toward the darkness of the opposite direction comes close to foolhardiness.

Given the weakness of defendant's argument of reliance on prior law, the allegations of hardship are difficult to sustain. As indicated, to commit oneself on the basis of defendant's unfounded assumption of the development of the maritime law constitutes an unreasonable risk. Yet even were we to seriously consider the hardship factor, we would be at odds in measuring its effect upon defendant for, aside from citing the *Stretton* decision extensively, it has not adequately shown the adversity that will befall. It would have been convenient for the court to examine the general practice in this District as to settlements with injured seamen and the loss of society claim so as to enable us to draw a conclusion from it. *See: Simpson* at 86. Likewise, an examination of the usual insurance policies involved in this type of claim to ascertain the extent of their coverage as well as an analysis of the number of pending and closed cases in this District that could be affected by our decision and the manner in which they could be affected[4] would have been extremely helpful to de-

termination of whether it was proper to adopt the exceptional view of non-retroactivity. Defendant failed to present data in support of its bare hardship allegations.

Since neither the factor of reliance on prior law nor the factor of hardship are of sufficient strength to persuade us that the claim for loss of society requires exceptional treatment and the final factor concerning the impact of retroactive application on the purposes of the rule in question clearly favors retroactive application, our analysis leads to in the conclusion that there are no reasons to depart from the presumption of retroactivity.

Accordingly, the motion to amend the complaint to include plaintiff's spouse and son's claim for loss of society is GRANTED and the amended complaint tendered is ordered filed.

SO ORDERED.

---

4. We advance for the sake of clarity and to avoid future complications that we are not an appellate court and our decisions are not binding on our fellow district court judges. *See: Starbuck v. City and Cty. of San Francisco,* 556 F.2d 450, 457 n. 13 (9th Cir.1977).