**Helen Stein GAUDET, Administratrix of the Estate of Awtrey C. Gaudet, Sr., Plaintiff-Appellant,**

v.

**SEA–LAND SERVICES, INC., Defendant-Appellee.**

**No. 71–3517.**

United States Court of Appeals, Fifth Circuit.

Aug. 3, 1972.

Rehearing Denied Aug. 24, 1972.

George W. Reese, New Orleans, La., for defendant-appellee.

Stuart A. McClendon, W. Frederick Denkman, Metairie, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The Albatross inherent in the vagaries and vicissitudes of right and remedy under differing state wrongful death statutes has been lifted from the Mariner's neck. Moragne v. State Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). Though the reckoning of the Supreme Court predicts this course will steer the Mariner into "more placid waters," Moragne at 408, 90 S.Ct. at 1792, they are waters which remain uncharted. Today we map at least part of them.

Helen Guadet filed a complaint against Sea-Land Services, Inc. to recover damages for the wrongful death of her husband which allegedly resulted from injuries he had received aboard a Sea-Land vessel. During his lifetime, Mr. Gaudet sought personal recovery for these same injuries. Ten days before his death he obtained a favorable judgment based upon a jury verdict for 175,000 dollars (to be reduced by 20 per cent for contributory negligence). Mrs. Gaudet was substituted for Mr. Gaudet in the action in order to respond to post-trial motions and to answer the appeal. Stein, Widow and Administratrix v. Sea-Land Services, Inc., 440 F.2d 1181 (5th Cir. 1971) [1971]. The judgment was subsequently affirmed by this court and was satisfied by payment to Mr. Gaudet's estate. Thereafter Mrs. Gaudet brought the present suit claiming financial losses due her as a result of Mr. Gaudet's death. The court below granted Sea-Land's motion to dismiss on the grounds of res judicata and failure to state a claim upon which relief could be granted. Because we hold that Mrs. Gaudet retained a compensable cause of action for Mr. Gaudet's death wholly apart from and not extinguished by the latter's recovery for his personal injuries, we reverse.

■ As this suit is one brought in admiralty for wrongful death upon a state's territorial waters (Louisiana), whether or not it should be barred by the decedent's prior recovery is now a question of federal maritime law. Its

resolution is part of that "further sifting through the lower courts" envisioned by the Supreme Court in Moragne, 398 U.S. at 408, 90 S.Ct. at 1792, and is a function of our responsibility for fashioning the controlling rules of this newly-created maritime action. Fitzgerald v. United States Lines Co., 374 U.S. 16, 20, 83 S.Ct. 1646, 10 L.Ed.2d 720 (1963). Such a role is not novel; admiralty law has for some time been "primarily judge-made law." The Tungus v. Skovgaard, 358 U.S. 588, 611, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959); Fredelos v. Merritt-Chapman & Scott Corporation, 447 F.2d 435, 438–440 (5th Cir. 1971); see Landis, Statutes and the Sources of Law, in Harvard Legal Essays 213, 226–27 (1934); Note, Maritime Wrongful Death After Moragne: The Seaman's Legal Lifeboat, 59 Geo.L.J. 1411, 1420 (1971). However, we have neither the intention nor the need to weave out of whole cloth a new suit in which to clothe this previously unrecognized cause of action; we have but to piece together the materials that are already available, e. g., the general maritime law, personal-injury cases, state wrongful death statutes, and the Death on the High Seas Act, by a pattern that complements the purposes designed by the Supreme Court in Moragne.

■ Sea-Land puts forth two basic arguments to support its contention that the maritime wrongful death action ought not be available in this case. It first maintains that Mrs. Gaudet is attempting to recover twice for the same wrongful act; that this is the second identical claim for the same injuries; and that to sustain the claim would permit double recovery. But this is not true. The personal injury and wrongful death suits assert two distinct causes of action designed to compensate for two separate losses—the first for the loss and suffering of the injured while he lived, and the second for the losses to his beneficiaries on account of his death. Baltimore & Ohio S. W. Ry. v. Carroll, 280 U.S. 491, 50 S.Ct. 182, 74 L.Ed. 566 (1930); Michigan Central Ry. v. Vree-

land, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913). Damage elements in the first generally include pain and suffering, medical expenses, and loss of earnings. But the second entails, though it is not always limited to, loss of support, loss of services (including society, care, and attention), loss of love and affection, grief or mental suffering of the survivors, and funeral expenses. *See generally,* Prosser, Law of Torts, pp. 927–32; Demos, Measure of Damages— Wrongful Death, 60 Ill.B.J. 518 (1972). Quite obviously, the jury verdict recovered by Mr. Gaudet during his lifetime did not include damages done to others by his death which had not yet occurred.[1] As the Supreme Court said in the *Carroll* case, *supra,* 280 U.S. at 494, 50 S.Ct. at 183:

> Although originating in the same wrongful act or neglect, the two claims [personal injury and wrongful death] are quite distinct, no part of either being embraced in the other. . . . One begins where the other ends, and a recovery upon both in the same action is not a double wrong. . . . St. Louis, Iron M & S Ry. Co. v. Craft, 237 U.S. 648, 658, 35 S. Ct. 704, 706, 59 L.Ed. 1160 (1915).

We intimate nothing as to the possibility of Mrs. Gaudet proving any of the possible damage elements listed above, nor which of them should be includible in this federal maritime action. *See* 25 Ark.L.Rev. 510 (1972). We note only that some of these elements have already been specifically recognized as compensable, Dennis v. Central Gulf Steamship Corporation, 453 F.2d 137 (5th Cir. 1972); In re Sincere Navigation Corp., 329 F.Supp. 652 (E.D.La.1971), and were not part of Mr. Gaudet's recovery. We conclude, then, that Mrs. Gaudet's suit is not res judicata and such further

wrongful death compensation as she might receive will not be part of a twice-told tale.

Sea-Land's second ground for dismissal is more troublesome. Relying upon what all parties concede to be the "majority rule," it is argued that:

> . . . where the statute in effect gives a remedy to recover damages where the death of a person is caused by the negligent or wrongful act of another, *such remedy depends upon the existence in the decedent, at the time of death, of a right of action to recover damages for such injury;* hence, if by a recovery of a judgment for damages due to the injury, or by a settlement with the wrongdoer, the injured person releases his cause of action, such release, in the absence of fraud or mistake, will preclude a recovery by his personal representative of damages based upon the same negligent or wrongful act. (emphasis supplied). Annot., 39 A.L.R. 579 (1925); *accord,* 22 Am.Jur.2d Death § 90 (1965); 25A C.J.S. Death § 49; Prosser, Law of Torts 932 (3d ed. 1964).

For several reasons, we refuse to hold that this rule should operate to bar Mrs. Gaudet's wrongful death action.

First, we note that a substantial number of those cases which foreclosed relief to a decedent's beneficiaries whenever the decedent himself had already recovered for his own injuries were based on "survival-type" rather than "true" wrongful death statutes. *See, e. g.,* Schlavick v. Manhattan Brewing Co., 103 F.Supp. 744 (N.D.Ill.1952), a case on which Sea-Land relies, and the text in 22 Am.Jur.2d *supra.* Such survival statutes merely preserve for a decedent's beneficiaries a cause he himself had at death but had never pursued. However,

---

[1] Mrs. Gaudet concedes that a possibility of double recovery does exist in that Mr. Gaudet's prior compensation for loss of future wages, and her own anticipated compensation for loss of support each represents the same funds and ought not to be twice paid. We commit to the discretion of the trial court the task of making an appropriate deduction from or accommodation of any judgment to which Mrs. Gaudet might otherwise be entitled, to insure that no double recovery results. *Cf.* Billiot v. Sewart, 382 F.2d 662 (5th Cir. 1967); Prosser, *supra,* at 934–35.

the wrongful death action Mrs. Gaudet now attempts to bring never belonged to Mr. Gaudet and in fact did not even accrue until his death. Baltimore & Ohio S. W. Ry. v. Carroll, *supra,* 280 U.S. at 495, 50 S.Ct. at 183. Having recognized these important distinctions, the Louisiana state courts, wherein Mrs. Gaudet's action *would have been permitted,* have reasoned:

> Where, however, a cause of action does arise, and the injured person has a period of suffering and expense, there seems no reason that he should not be able, while living, to make an adjustment of his claim with defendant which would bar a recovery by his beneficiaries after his death upon the same claim. But the action given under other than survival statutes is entirely distinct from the action which deceased had at the moment prior to his death. It is an action for damages arising from the mere fact of death, not damages to the deceased, but damages to his successors under the statute. Therefore, we cannot comprehend the reasoning which enables an injured person to release a cause of action which has not accrued, and cannot accrue until his death, and which then accrues to third persons. It would be necessary to support such a conclusion that we admit that a person has a right of action for his own death.

> Johnson v. Sundbery, 150 So. 299, 301 (La.App.1933). *Accord,* Gilmore v. Southern Ry., 229 F.Supp. 198, 200–201 (E.D.La.1964).

We concur in this analysis. *Accord,* Montellier v. United States, 315 F.2d 180 (2nd Cir. 1963); Brown v. Moore, 247 F.2d 711 (3rd Cir. 1957), cert. denied, 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed. 2d 112; Wilson v. Massengill, 124 F.2d 666 (6th Cir. 1942), cert. denied, 316 U. S. 686, 62 S.Ct. 1274, 86 L.Ed. 1758; *see* Ruditis v. Gallop, 269 F.2d 50 (8th Cir. 1959); Kroger Grocery & Baking Co. v. Reddin, 128 F.2d 787 (8th Cir. 1942); Puget Sound Traction Light & Power Co. v. Frescoln, 245 F. 301 (9th Cir. 1917).

Second, even were the majority rule supported exclusively by cases interpreting "true" wrongful death statutes, *i. e.,* those that establish a new, not a revived cause of action, we would still decline to follow it. In establishing a uniform rule for the operation of the wrongful death suit in admiralty, we have both the authority and the responsibility to espouse a minority rule if it better serves the purposes of the action. Here it does. We have not overlooked the fact that Lord Campbell's Act,[2] the original wrongful death statute, contained an express provision limiting the death action to those cases where the deceased could have recovered damages if he had lived. Rather, we are in complete accord with Prosser's observation that:

> It is not at all clear . . . that such provisions of the death acts ever were intended to prevent recovery where the deceased once had a cause of action, but it was terminated before his death. The more reasonable interpretation would seem to be that they are directed at the necessity of some original tort on the part of the defendant, under circumstances giving rise to liability in the first instance, rather than to subsequent changes in the situation affecting only the interests of the decedent. Prosser, *supra* at 933.

Thus, we are persuaded that such language means no more than that if the wrongful act of a defendant which allegedly caused death was itself an actiona-

2. 9 & 10 Vict., ch. 93: ". . . That whensoever the Death of a Person shall be caused by wrongful Act, Neglect or Default, and the Act, Neglect or Default is such as would (if Death had not ensued) have entitled the Party injured to maintain an Action and recover Damages in respect thereof, then and in every such Case the Person who would have been liable if Death had not ensued shall be liable to an Action for Damages, notwithstanding the Death of the Person injured."

ble tort, a wrongful death claim may be stated.

■ Nevertheless, even under the more restrictive majority interpretation of the Lord Campbell's Act language, we think Mrs. Gaudet stated a claim; Mr. Gaudet *did* have a cause of action immediately before death. At that moment, his right to collect damages for his personal injuries was very much alive, viable, and pending. In no sense could that right be said to have been already extinguished on the day he died. Indeed, the Death on the High Seas Act, the only federal statute designed exclusively to compensate wrongful death in admiralty, explicitly provides for the right of a beneficiary to bring a wrongful death action where the decedent's personal injury action is pending at death. 46 U.S.C.A. § 765.[3] That section takes note of but one example of the broader principle we specifically hold today: when an injured seaman dies, his widow's wrongful death action does not die with him.

Finally, and most importantly to this court, we cannot interpret *Moragne* as having created a wrongful death action in admiralty, at long last, only for the families of those decedents who failed to recover for their own injuries during life. The High Court in that case clearly recognized that the breach of a primary duty to a mariner which causes both injury and death results in two separate harms:

.  .  .  in the case of mere injury, the person physically harmed is made whole for his harm, while in the case of death, those closest to him—usually spouse and children—seek to recover for their total loss of one on whom they depended. *Id.* 398 U.S. at 382, 90 S.Ct. at 1778.

We refuse to now hold that such a "total loss" is to go uncompensated on the wholly arbitrary rationale that the injured person has already sued for or recovered for his *separate damages*.

It is unquestioned in some cases that both the decedent's damages and the beneficiaries' damages can be recovered. We have recently approved the combining of a state survival action with a Death on the High Seas action so that both recoveries may be obtained. Dennis v. Central Gulf Steamship Corp., *supra*, 453 F.2d at 140; *accord*, Dugas v. National Aircraft Corp., 438 F.2d 1386 (3rd Cir. 1971); Petition of Gulf Oil Corp., 172 F.Supp. 911 (S.D.N.Y.1959); *see* Kernan v. American Dredging Co., 355 U.S. 426, 431, n. 4, 78 S.Ct. 394, 2 L.Ed.2d 382. Are we now to conclude that both recoveries are available only where neither is sought before death? Is the rule to be that a man may bring suit to ameliorate his pain and suffering and lost wages, but only at the risk of sacrificing his beneficiaries' action should he die? We refuse to tell the injured mariner to "take the cash and let the promise go,"[4] for *Moragne's* broad purposes will permit no such ukase. Therein the Supreme Court, 398 U.S. at 387, 90 S.Ct. at 1781, reiterated with approval Chief Justice Chase's remarks in The Sea Gull:

.  .  .  and certainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules.

21 Fed.Cas. 909, 910 (No. 12,578) (C. C.Md.1865).

Nor does anything in the Supreme Court's decisions in Mellon v. Goodyear, 277 U.S. 335, 48 S.Ct. 541, 72 L.Ed. 906 (1928) and Flynn v. New York, N. H. &

---

3. If a person die as the result of such wrongful act, neglect, or default as is mentioned in section 761 of this title during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this chapter for the recovery of the compensation provided in section 762 of this title.

4. Edward Fitzgerald, *Rubaiyat of Omar Khayam of Naishapur*, Stanza XIII.

H. R. Co., 283 U.S. 53, 51 S.Ct. 357, 75 L.Ed. 837 (1931) persuade us otherwise. In those two cases, both of which were actions on behalf of a decedent's widow to recover damages for wrongful death under the Federal Employer's Liability Act, 45 U.S.C.A. §§ 51–59, the Supreme Court denied relief on the grounds that:

> By the overwhelming weight of judicial authority where a statute of the nature of Lord Campbell's Act in effect gives a right to recover damages for the benefit of dependents, the remedy depends upon the existence in the decedent at the time of his death of a right of action to recover for such injury. Mellon v. Goodyear, *supra*, 277 U.S. at 344, 48 S.Ct. at 544.

In the *Mellon* case, the decedent had effected a compromise with his employer before death, and in the *Flynn* case, the statute of limitations had run on the decedent's personal injury right before death.[5] Though we find those two cases analogous to the one before us, we do not construe them as amounting to "established and inflexible rules" that *must* now be applied in the admiralty court to bar Mrs. Gaudet's remedy. First, as previously stated, Mr. Gaudet did have a cause of action immediately before death. Though we could rest our decision on that basis alone, we choose not to do so. The policy favoring recovery for a breach of a federal maritime duty is far too important to be left teetering on such a technicality. *Moragne*, 398 U. S. at 393, 90 S.Ct. at 1783. We are persuaded that, at least in the admiralty law, the Supreme Court has made the cleavage between a personal injury and a wrongful death suit unmistakable in *Moragne*—the wrongful death right is completely independent from and in nowise a derivative of the decedent's personal injury claim. That was not so in *Mellon* and *Flynn;* in those cases

wrongful death rose and fell with personal injury. Thus if we assume that a "statute of the nature of Lord Campbell's Act" ought to be interpreted for FELA purposes today as foreclosing any remedy to a spouse whose partner recovered during his or her life, *Mellon*, 277 U.S. at 344, 48 S.Ct. at 544, we must conclude it could not have been such a Lord Campbell's Act that the Supreme Court gave to admiralty in *Moragne*. It was rather an action that would reaffirm the "special solicitude" the admiralty court held for those coming within its jurisdiction;[6] an action that would extend a remedy save where there was a legislative direction to except a particular class of cases;[7] and an action that would in some measure compensate for the total loss of one upon whom others depended.[8] We hold that such an action is not one that can be sued out, sold out, compromised, or lost by the deceased's actions or inaction before it ever comes into being.

Reversed and remanded.

---

5. In a comparable FELA case, the Ninth Circuit has recently strictly adhered to the principle announced in *Mellon*. Walrod v. Southern Pacific Co., 447 F.2d 930 (9th Cir. 1971).

6. *Moragne*, 398 U.S. at 387, 90 S.Ct. at 1780.

7. 398 U.S. at 393, 90 S.Ct. at 1783.

8. 398 U.S. at 382, 90 S.Ct. at 1778.