Donald **NEAL** Sr., individually and on behalf of the estate of his deceased son, Donald Neal Jr., and individually and as the personal representative of the estate of Donald Neal Jr., Plaintiff,

and

Stella Neal Gill, Plaintiff–Intervenor,

v.

**BARISICH, INC.;** George A. Barisich; Sea Container Services, Ltd.; Boxer 3, Limited; Britannia Steamship Insurance Ass'n, Inc.; Charles F. Arnoult; and The Board of River Boat Pilot Commissioners, Defendants.

Civil A. No. 88–3119.

United States District Court, E.D. Louisiana.

Feb. 28, 1989.

---

Pamela P. Rask, New Orleans, La., for Donald Neal, Sr.

Fernandez & Selig, Richard J. Fernandez, Trial Atty., Louis P. Selig, Metairie, La., for Stella Neal Gill.

Gelpi, Sullivan, Carroll & Laborde, Gerard T. Gelpi, Trial Atty., Charles A. Cerise, Jr., New Orleans, La., for Sea Containers Services Ltd., Boxer 3, Ltd., Britannia Steamship Ins. Ass'n, Inc.

Chaffe, McCall, Phillips, Toler & Sarpy, J. Dwight LeBlanc, Jr., Trial Atty., New Orleans, La., for Charles F. Arnoult.

Badeaux & Discon, Thomas M. Discon, Trial Atty., John G. Discon, Metairie, La., for Barisich, Inc., George A. Barisich.

## ORDER AND REASONS

PATRICK E. CARR, District Judge.

This matter came before the Court on February 22, 1989 for hearing on motion of all defendants for summary judgment. The Court took the matter under submission. For the following reasons, the Court now GRANTS IN PART AND DENIES IN PART the motion.

### I.

On November 22, 1987, two vessels collided in the Mississippi River Gulf Outlet Canal. Donald Neal Jr. was a crewmember on one of the vessels and could not be located shortly after the collision. His body was later found in the canal. Plaintiffs allege that he was thrown overboard and drowned from the collision, but admit that no one saw him go overboard or drown.

Plaintiffs are Donald Jr.'s parents, Donald Neal Sr. and Stella Neal Gill. Donald Sr. asserts his claims individually and as the personal representative for his son's estate; Stella has intervened as a plaintiff to assert her claims individually.[1] Plaintiffs each assert three claims: one of gen-

---

1. Under both the Jones Act and general maritime law, only the personal representative of a decedent's estate has standing to initiate suit for any survival damages (which inure to the decedent's estate and ultimately to the estate's beneficiaries) and for any wrongful death damages

eral maritime negligence against all the defendants (the vessel owners, the insurer of one of the vessels, the river pilot on that vessel, and the Board of River Boat Pilot Commissioners),[2] and one of unseaworthiness and one of Jones Act negligence against Donald Jr.'s employers, who were also the owners of the vessel on which he had been working. Plaintiffs seek a survival award for Donald Jr.'s pre-death pain and suffering as well as a wrongful death award for pecuniary damages (viz., burial expenses, loss of support, and loss of services) and non-pecuniary damages (viz., loss of society); on the unseaworthiness claim, they also seek a punitive damage award.

Donald Jr., who was 19 years old when he died, had never had any children and had never been married. The St. Bernard Parish Coroner's death certificate lists "asphyxiation due to drowning" as the cause of death; it lists the date and time of injury as November 22, 1987 at 6:30 a.m. and lists the date and time of death as December 1, 1987 at 12:30 p.m. The present record has no other evidence indicating the extent of time, if any, after the collision that Donald Jr. remained conscious or even alive.

Donald Jr.'s parents have been divorced for many years; at the time of the divorce, Donald Jr. and his father remained in Louisiana, while his mother moved to Mississippi, where she still lives.

After the divorce, Donald Jr. never resided with his mother. She never received any money from him and was not otherwise financially dependent upon him in any way. The last visit Donald Jr. had at his mother's was a stay of two-to-four weeks in the summer of either 1984 or 1985. Donald Jr. performed no services or work for his mother after that visit.

Donald Sr. never received any money, "food or anything" from Donald Jr. and admits "that he has not received any past or present support from" his son; in fact, Donald Sr. claimed his son as a dependent on his 1987 tax return. Donald Sr. testified that he paid for his son's funeral and burial expenses, but the record does not reveal what these amounts were.[3] The death certificate lists the same address for Donald Jr. and Donald Sr. According to his father, Donald Jr. would at times "give [his father] a hand with" his father's occasional weekend job of setting up fences, for which work his father would pay him "a few dollars." Further, according to his father, Donald Jr. "went out" on weekends with his father on his father's fishing boat, but had not done so for about a year before his death; the record does not reveal what, if anything, Donald Jr. would do on these weekend trips.

At oral argument, both plaintiffs' counsel conceded that it would be mere specula-

---

(which inure directly to the decedent's survivors). *Ivy v. Security Barge Lines, Inc.,* 585 F.2d 732, 734–35 (5th Cir.1978), *modified en banc on other grounds,* 606 F.2d 524 (5th Cir.1979), *cert. denied,* 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980). A beneficiary may intervene in the personal representative's suit in certain circumstances if a conflict of interest among two or more beneficiaries exists. *Calton v. Zapata Lexington,* 811 F.2d 919, 921 (5th Cir.1987) (citing *Smith v. Clark Sherwood Oil Field Contractors,* 457 F.2d 1339, 1343–45 (5th Cir.), *cert. denied,* 409 U.S. 980, 93 S.Ct. 308, 34 L.Ed.2d 243 (1972)).

Because no parties have objected at this time to Stella's standing to litigate along with the personal representative, *see Ivy,* 585 F.2d at 734 (citing *Landry v. Two R. Drilling Co.,* 511 F.2d 138, 141 n. 2 (5th Cir.), *reh'g denied,* 517 F.2d 675 (5th Cir.1975) (per curiam)); F.R.Civ.P. 9(a), the Court likewise does not address the issue at this time. *See Dennis v. Central Gulf Steamship Corp.,* 453 F.2d 137, 139 (5th Cir.)

(not addressing right of decedent's daughter to sue where defendant challenged not her right to sue, but only the damages she could recover as a beneficiary), *cert. denied,* 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218 (1972). *But cf. Tidewater Marine Towing, Inc. v. Dow Chemical Co.,* 689 F.2d 1251, 1253 (5th Cir.1982) (per curiam) (apparently raising *sua sponte* the issue of a claimant's standing to sue in a limitation proceeding where a seaman died and the claimant was not his personal representative).

**2.** Donald Sr. has voluntarily dismissed without prejudice his claims against the river pilot and the pilot board; Stella has not.

**3.** At oral argument, Donald Sr.'s counsel stated that the expenses totaled a little over $3,000. Defense counsel, however, questioned whether Donald Sr. paid for the expenses and suggested that Donald Jr.'s girlfriend may have paid for these expenses out of insurance proceeds she received for Donald Jr.'s death.

tion whether Donald Jr. would have contributed any money to either of his parents in the future, had he lived.

While conceding for these purposes the issue of liability, all defendants now move for summary judgment on the ground that plaintiffs have no evidence to support any damages under the applicable law.

## II.

Below, the Court addresses each of the damages the parents seek.

**4.** La.Civ.Code arts. 2315.1–.2. As a practical matter, there appears no difference between the survival damages recoverable under Louisiana state law and those recoverable under general maritime law and the Jones Act: damages for the decedent's conscious pre-death pain and suffering and for any pre-death personal losses to the decedent, such as medical costs or lost wages. There is, however, a significant difference between the recoverable wrongful death damages: a survivor may recover for "survivor's grief" under Louisiana law, *e.g., Trahan v. Gulf Crews, Inc.,* 260 La. 29, 255 So.2d 63, 71 (1971), whereas a survivor may not under general maritime law, *Sea–Land Services v. Gaudet,* 414 U.S. 573, 585 n. 17, 94 S.Ct. 806, 815 n. 17, 39 L.Ed.2d 9 (1974). *See In re S/S Helena,* 529 F.2d 744, 747 (5th Cir.1976).

**5.** *Thurmond v. Delta Well Surveyors,* 836 F.2d 952, 958 n. 2 (5th Cir.) (Garwood, J., concurring) (citing *S/S Helena,* 529 F.2d at 753 (refusing to apply Louisiana's wrongful death statute in a case concerning seamen's deaths from a vessel collision in territorial waters; finding that *Moragne* rejected all rationale for applying, on its own force, state law on the issue of damages recoverable in admiralty)), *reh'g denied mem.,* 844 F.2d 788 (5th Cir.1988); *see Sistrunk v. Circle Bar Drilling Co.,* 770 F.2d 455, 456–57 (5th Cir.) (concerning seamen's deaths in territorial waters), *reh'g denied mem.,* 775 F.2d 301 (5th Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986). *See generally State of Louisiana ex rel. Guste v. M/V Testbank,* 752 F.2d 1019, 1031–32 (5th Cir.1985) (en banc) ("It is well-settled that the invocation of federal admiralty jurisdiction results in the application of federal admiralty law rather than state law."), *cert. denied sub nom. White v. M/V Testbank,* 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986).

**6.** *Evich v. Morris (Evich II),* 819 F.2d 256, 257–58 (9th Cir.1987) (general maritime survival damages are not to be supplemented by state law), *after remand from Evich I,* 759 F.2d 1432, 1434 (9th Cir.1985) (survival damages are recoverable under general maritime law), *cert. denied,* — U.S. ——, 108 S.Ct. 261, 98 L.Ed.2d 218

### A. *Recovery under Louisiana law*

■ Both plaintiffs assert that they may recover not only those damages allowable under general maritime law and the Jones Act, but also those allowable under Louisiana's survival and wrongful death statutes.[4] The law is well-established that "the uniform 'common law' of admiralty displaces state wrongful death statutes in territorial waters."[5] The same rule applies for state survival statutes.[6] Thus, the Court must dismiss all claims under Louisiana state law; plaintiffs may only look to admi-

(1987); *see Law v. Sea Drilling Corp.,* 523 F.2d 793, 795, 798 (5th Cir.1975) (holding that DOHSA did not preclude an award for survival damages under *Moragne,* and adding that "[n]o longer does one need a state remedy"), *followed in Azzopardi v. Ocean Drilling & Exploration Co.,* 742 F.2d 890, 893–94 (5th Cir.1984) (reaffirming *Law* after *Higginbotham* ).

There admittedly exists dictum in *Dennis,* 453 F.2d 137, that suggests that pre-death pain and suffering awards in admiralty may be by way of state survival statutes. *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 394 n. 6 (5th Cir.1983) (acknowledging this dictum, but "not directly address[ing] these matters"); *see also Hamilton v. Canal Barge Co.,* 395 F.Supp. 978, 983 (E.D.La. 1975) (Rubin, J.) ("this abbreviated reference should not be taken as dispositive of the issue"). While the court in *Dennis* stated that "[a]n action by dependents under [DOHSA] for a non-seaman decedent does not prevent the plaintiffs from recovering state survival damages in the same suit," *Dennis,* 453 F.2d at 140 (citing three pre-*Moragne* cases), it went on to explain that admiralty courts no longer apply state law on its own force, *id.* (citing *Hornsby v. Fish Meal Co.,* 431 F.2d 865, 867 (5th Cir.1970), which "refused to apply state law in [a] post-*Moragne* wrongful death action[ ]," *S/S Helena,* 529 F.2d at 749 n. 8), but only look to state law "as persuasive analogy for guidance," *id.,* and concluded that *Moragne* remedies include those for pre-death pain and suffering, *id.* at 141. *See also In re Dearborn Marine Service, Inc.,* 499 F.2d 263, 288 n. 50 (5th Cir.1974) (contrasting *Dennis* with pre-*Moragne* cases that looked to state law), *reh'g denied,* 512 F.2d 1061 (5th Cir.), *cert. dism'd sub nom. Monk v. Chambers & Kennedy,* 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975).

In affirming awards for pre-death pain and suffering, two Fifth Circuit opinions concerning DOHSA death purport to apply state survival statutes on the authority of *Dennis. See Solomon v. Warren,* 540 F.2d 777, 792 & n. 20 (5th Cir.1976), *reh'g denied mem.,* 545 F.2d 1298 (5th Cir.), *cert. dism'd sub nom. Warren v. Serody,* 434 U.S. 801, 98 S.Ct. 28, 54 L.Ed.2d 59 (1977); *Snyder v. Whittaker Corp.,* 839 F.2d 1085, 1092

ralty law.[7]

## B. *Pre-death pain and suffering*

▮ These damages are considered pecuniary damages,[8] recoverable as survival damages to the decedent's estate under both the Jones Act and general maritime law.[9] While "[t]he pain and suffering of a drowning seaman is a compensable injury, ... there must be evidence supporting a

finding that the decedent was conscious when drowned."[10] Without such evidence, no such damages may be awarded.[11]

In this case, however, there is no evidence that decedent had any conscious pre-death pain and suffering. Despite plaintiffs' contentions to the contrary, the death certificate alone does not create an inference of conscious pre-death pain and suffering;[12] in opposing summary judgment,

---

(5th Cir.1988). First, this purported application of state law is dictum, inasmuch as neither award turns on any distinction between the state law survival damages and general maritime survival damages and both awards are sustainable under the general maritime law in accordance with *Dennis* and *Azzopardi,* among others. Second, the dictum cannot be considered controlling, inasmuch as it conflicts with the Fifth Circuit's earlier holdings in *Dennis* and *Law* (as well as perhaps *Hornsby* and *S/S Helena* ), which are to the contrary on the same issue. *Compare Ryals v. Estelle,* 661 F.2d 904, 906 (5th Cir.1981) ("It has long been a rule of [the Fifth Circuit] that no panel of this circuit can overrule a decision previously made by another.") *with Legros v. Panther Services Group, Inc.,* 863 F.2d 345, 349 (5th Cir.1988) (distinguishing methods of analysis from holdings), *reh'g en banc pending,* No. 87–4370, Order (5th Cir. Feb. 8, 1989). Thus, these two cases cannot be considered controlling.

7. Plaintiffs argue that *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed. 2d 174 (1986), implicitly held that while Louisiana's wrongful death statutes may not be applied to deaths on the high seas, these state statutes may nonetheless be applied to deaths that occur in the state's territorial waters and that fall within federal admiralty jurisdiction. Plaintiffs misread the discussion in *Tallentire* on § 7 of DOHSA, which the majority explained was merely a "jurisdictional savings" clause similar to the saving-to-suitors clause in 28 U.S.C. § 1333. Plaintiffs' argument was the very argument espoused by the dissent, and rejected by the majority, in *Tallentire.* To adopt plaintiff's reading of *Tallentire* would be to return to the pre-*Moragne* quagmire. *S/S Helena,* 529 F.2d at 753.

8. *De Centeno v. Gulf Fleet Crews, Inc.,* 798 F.2d 138, 141 (5th Cir.1986); *see Ivy,* 606 F.2d at 526.

9. *In re Merry Shipping, Inc.,* 650 F.2d 622, 623–24 (5th Cir. Unit B), *reh'g denied mem.,* 659 F.2d 1079 (5th Cir. Unit B 1981); *see Graham v. Milky Way Barge, Inc.,* 824 F.2d 376, 387 (5th Cir.) (discussing general maritime law only) (citing *Azzopardi,* 742 F.2d at 893–94 (same)), *reh'g denied mem.,* 832 F.2d 1264 (5th Cir.1987); *Ivy,* 606 F.2d at 526 (discussing the Jones Act and Congress' overruling of *Michigan Central*

*Railroad v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913), on this point).

10. *See Deal v. A.P. Bell Fish Co.,* 728 F.2d 717, 718 (5th Cir.1984) (per curiam) (explicitly referring to the Jones Act, but implicitly referring to general maritime law as well).

11. *Dearborn,* 499 F.2d at 288 (reversing award where the evidence was too speculative); *Hueschen v. Fluor Ocean Services,* 483 F.2d 1396, 1397 (5th Cir.1973) (per curiam) (affirming no award where the district court found that the seaman was killed instantaneously and had no conscious pain and suffering); *see Moorhead v. Mitsubishi Aircraft International,* 828 F.2d 278, 288 n. 43 (5th Cir.1987) (affirming no award under Texas state law, where there was no evidence of what happened before a plane crash); *In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982 (Giancontieri v. Pan American World Airways),* 767 F.2d 1151, 1157 (5th Cir.) (reversing an award under Louisiana state law, where there was no evidence of conscious pain and suffering prior to death), *reh'g denied mem.,* 775 F.2d 301 (5th Cir.1985). *Contrast Hlodan v. Ohio Barge Line, Inc.,* 611 F.2d 71, 76 (5th Cir.1980) (upholding award for pre-death pain and suffering where "[t]he evidence showed that for some undetermined number of minutes before his death [the decedent] was aware of his predicament, and that his death by drowning was not instantaneous").

12. First, the death certificate lists the date of death as December 1, 1987—a full 9 days after the collision. If the collision and death were actually 9 days apart, then the decedent's drowning could not have been caused by the collision. Second, even if one assumes that either the 12/01/87 date of death or the 11/22/87 date of collision was an error and that the two events occurred on the same day, there is still insufficient evidence from the death certificate to infer pre-death pain and suffering, for nothing in the present record indicates whether the decedent had been conscious or unconscious during any of the period before his death. The asserted cause of death in the death certificate—asphyxiation from drowning —is alone no help, for a person may certainly fall into water and drown all in an unconscious state, as the Fifth Circuit implicitly held in *Deal*

plaintiffs may not rely on conjecture and bald statements that someone may be able to testify that Donald Jr. was conscious for a period between the collision and his ultimate death. Because plaintiffs have the burden to produce evidence of a genuine dispute but have not done so,[13] the Court must dismiss these claims.

## C. *Funeral and burial expenses*

■ Funeral and burial expenses are recoverable under general maritime law (although it appears unclear at present whether they are recoverable as survival damages to a decedent's estate or instead as wrongful death damages to his surviv-

ors).[14] These expenses are also recoverable under the Jones Act.[15]

While the record does not reveal the amount of any funeral expenses, the father stated in his deposition that he paid for these expenses and thus there is a genuine dispute so as to prevent summary judgment on this one, narrow issue. Thus, the Court may not dismiss the father's funeral expense claim at this time.

## D. *Loss of support and services*

■ General maritime law permits survivors to recover pecuniary damages for loss of support[16] and for loss of household services.[17] The Jones Act permits benefi-

when it directed the district court to instruct the jury that the jury could award for pre-death pain and suffering from drowning only if it found that the seaman had been conscious. *See Deal,* 728 F.2d at 718.

**13.** *See generally Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); F.R. Civ.P. 56.

**14.** *Compare Gaudet,* 414 U.S. at 584, 94 S.Ct. at 814 ("under the maritime wrongful death remedy, the decedent's dependents may recover damages for ... funeral expenses"), *aff'g,* 463 F.2d 1331, 1333 (5th Cir.1972) (characterizing these expenses as wrongful death damages and not as survival damages) *with Dennis,* 453 F.2d at 141 ("whether these expenses are payable by the estate or by the personal representative," these expenses are recoverable under general maritime law, even where DOHSA, which the court stated without citation did not provide for recovery of these expenses, applies); *Truehart v. Blandon (Truehart III),* 685 F.Supp. 956, 958 (E.D.La.1988) (implicitly holding that funeral expenses were recoverable to the decedent's personal representative under general maritime law, where the decedent's survivors were non-dependent on the decedent); *and Cities Service Oil Co. v. Launey,* 403 F.2d 537, 540 (5th Cir. 1968) (in a pre-*Moragne* case, reversing award to a Louisiana widow under the Jones Act and DOHSA for funeral expenses, since in Louisiana the decedent's estate, and not the surviving spouse, is liable for any funeral expenses) (distinguishing *Moore v. O/S Fram,* 226 F.Supp. 816, 818 (S.D.Tex.1963) (Garza, J.) (awarding funeral expenses in a DOHSA/Jones Act case, where the widow, who was the decedent's personal representative, was legally obligated to pay them), *aff'd on appeal for other grounds sub nom. Wilhelm Seafoods, Inc. v. Moore,* 328 F.2d 868 (5th Cir.1964) (per curiam)).

In the remaining Fifth Circuit opinions this Court has found where the district court had

awarded damages for these expenses, the Fifth Circuit did not discuss the issue nor apparently was the issue raised by the parties. *See Verdin v. C & B Boat Co.,* 860 F.2d 150, 157 n. 6, 158 (5th Cir.) (upholding liability for unseaworthiness and Jones Act negligence), *reh'g denied mem.,* 862 F.2d 874 (5th Cir.1988); *In re Patton-Tully Transportation Co.,* 797 F.2d 206, 209 n. 1 (5th Cir.) (same), *reh'g denied mem.,* 800 F.2d 262 (5th Cir.1986); *Smith v. Ithaca Corp.,* 612 F.2d 215, 216 n. 2 (5th Cir.1980) (upholding liability for unseaworthiness and under DOHSA and the Jones Act); *Neal v. Saga Shipping Co.,* 407 F.2d 481, 487 (5th Cir.) (upholding liability for unseaworthiness for death of a *Sieracki*-longshoreman), *cert. denied,* 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969); *see also Weeks v. Alonzo Cothron, Inc.,* 493 F.2d 538, 544 (5th Cir.1974) (aff'g denial of funeral expenses where no evidence therefor had been offered).

**15.** *See Cities Service,* 403 F.2d at 540. *See generally Ivy,* 606 F.2d at 526 (in wrongful death cases, the Jones Act permits recovery of both pecuniary survival and pecuniary wrongful death damages).

**16.** *Gaudet,* 414 U.S. at 584, 94 S.Ct. at 814 (concerning general maritime law for deaths in territorial waters); *see Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 622, 98 S.Ct. 2010, 2013, 56 L.Ed.2d 581 (1978) (dictum for death on the high seas); *see also Patton-Tully,* 797 F.2d at 212–13 (affirming award to surviving siblings under general maritime law, even though such an award was precluded under the Jones Act since the decedent's mother also survived).

**17.** *Gaudet,* 414 U.S. at 585, 94 S.Ct. at 815 ("Services the decedent performed at home or for his spouse are ... compensable."); *see Higginbotham,* 436 U.S. at 622, 98 S.Ct. at 2013 (dictum for death on the high seas); *see also Patton-Tully,* 797 F.2d at 212–13 (affirming award to *family*—surviving mother and sib-

ciaries thereunder to recover the same pecuniary damages.[18]

Both plaintiffs concede that they were in no way financially dependent on the decedent and that they never received any money from him. Further, they concede that it would be mere speculation whether the decedent might have given either of them financial support in the future, had he lived. An award for damages, however, "cannot stand when the only evidence to support it is speculative or purely conjectural."[19] Thus, the Court must dismiss all claims for loss of support.

The decedent's mother testified that he had not performed any services for her since at least the summer of 1985. Again, it would be mere conjecture to presume that the decedent, had he lived, might have decided to start performing other services for her in the future. Thus, the Court must dismiss her claim for loss of services.

The decedent's father fares no better on his claims for loss of services. While the decedent apparently did intermittent weekend work for his father, his father paid him for that work. Thus, the father has suffered no monetary loss for any such future work the decedent might have done, and monetary (or pecuniary) loss is of course the touchstone for this element of damages; to hold otherwise would mean that in

every wrongful death case, a decedent's employer would be able to assert claims for loss of its employee—the standard for measuring these damages, albeit already imprecise, would become meaningless. Nor does the testimony concerning the father and son's boat rides save the father's claim. First, the father admitted that the decedent had not gone on such a boat ride for over a year (again, it would be conjecture to presume when and how often the decedent would have gone riding with his father in the future). Second, the record is silent on indicating that the decedent performed any services for his father on the boat—that these boat rides were anything but weekend pleasure cruises. Thus, the Court must dismiss the father's claim for loss of services.

### E. Loss of inheritance

■ Loss of inheritance is a pecuniary loss recoverable under both DOHSA[20] and FELA.[21] The Fifth Circuit has not directly addressed the issue of whether loss of inheritance is recoverable under either the Jones Act or general maritime law. Because this element of damages is not supportable on the facts in the record, the Court need not decide whether, under appropriate facts, this element of damage would be recoverable under either the Jones Act or general maritime law.[22]

---

lings—under general maritime law, even though such an award to the siblings was precluded under the Jones Act since the decedent's mother also survived); *cf. De Centeno,* 798 F.2d at 142 (under the Jones Act, a surviving spouse was "permitted to recover the monetary value of any household services [the decedent] would have performed during his life expectancy had he lived"). For a decedent's children, these loss of services may also include loss of nurture/support/training. *See Gaudet,* 414 U.S. at 585, 94 S.Ct. at 815.

**18.** *See De Centeno,* 798 F.2d at 141.

**19.** *In re Air Crash Disaster at New Orleans on July 9, 1982 (Eymard v. Pan American World Airways),* 795 F.2d 1230, 1235 (5th Cir.1986) (quoting *Marks v. Pan American World Airways,* 785 F.2d 539, 542 (5th Cir.1986) (quoting *Haley v. Pan American World Airways,* 746 F.2d 311, 316 (5th Cir.), *reh'g denied mem.,* 751 F.2d 1258 (1984))) (reversing an award for loss of inheritance where the testimony of plaintiffs' economic expert on the computed value of the dece-

dent's future earnings was based on mere speculation).

**20.** *Snyder,* 839 F.2d at 1093 (aff'g award to decedent's "family" that included minor children); *Solomon,* 540 F.2d at 790 (same for decedents' three dependent children); *National Airlines, Inc. v. Stiles,* 268 F.2d 400, 403–04 (5th Cir.) (same for widow), *cert. denied,* 361 U.S. 885, 80 S.Ct. 157, 4 L.Ed.2d 121 (1959).

**21.** *Martin v. Atlantic Coast Line Railroad,* 268 F.2d 397 (5th Cir.1959).

**22.** *See Truehart v. Blandon (Truehart II),* 684 F.Supp. 1368, 1373 n. 4 (noting "the issue is not an easy one" and citing analogous cases coming to opposite conclusions); *cf. Complaint of Cambria Steamship Co.,* 505 F.2d 517, 523 (6th Cir. 1974) (dictum presuming that general maritime law provides for recovery of such, but affirming a denial of such an award to the decedent's younger non-dependent brother), *cert. denied,* 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975).

Plaintiffs have presented no evidence that "the decedent had a history of accumulating property."[23] Nor have they presented any evidence to overcome the "improbab[ility] that parents will inherit from children"[24] (viz., that plaintiffs would have outlived Donald Jr. had he lived). In other words, they have not produced evidence of "a reasonable expectation of pecuniary benefit" through any inheritance from their son had he lived his life expectancy.[25] Thus, the Court must dismiss any claims for loss of inheritance.

### F. Loss of society

 Being non-pecuniary damages, loss-of-society damages are not recoverable under the Jones Act in *any* circumstances.[26] They are, however, recoverable under general maritime law in certain circumstances.[27]

In *Truehart v. Blandon*,[28] Judge Schwartz of this Court provided a well-reasoned, thoughtful opinion that addresses in detail the very issue before this Court on parents' right to collect damages under general maritime law for loss of their deceased child's society. On a summary judgment motion, Judge Schwartz held that surviving parents could not collect under general maritime law for the loss of their deceased son's society, where the son had died in a boating accident in state territorial waters, had not been married or had any children, had not been living with his parents at the time of his death, and had provided no financial support to his parents. Judge Schwartz left open the possibility that, but without deciding whether, a surviving parent who was not *financially* dependent on the decedent may nonetheless be held to be "dependent" on the decedent, where the survivor and the decedent had been living together in the same home.[29]

Like other courts,[30] this Court fully concurs with the reasoning in *Truehart.* Judge Schwartz found only six Fifth Circuit cases where parents had sought loss-of-society damages for the maritime wrongful death of their children; he noted that recovery therefor was allowed in only one case, in which the parent had been financially dependent upon her deceased son.[31] This Court has found four addition-

---

**23.** *Tallentire v. Offshore Logistics, Inc.,* 754 F.2d 1274, 1287 (5th Cir.1985) (affirming denial of loss-of-inheritance), *rev'd on other grounds,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), *adhered to on this point on remand,* 800 F.2d 1390, 1392 (5th Cir.1986); *see also Snyder,* 839 F.2d at 1089 (listing factors to consider for such an award).

**24.** *Bergen v. F/V St. Patrick,* 816 F.2d 1345, 1351 (9th Cir.1987) (citing *Nygaard v. Peter Pan Seafoods, Inc.,* 701 F.2d 77, 80 (9th Cir.1983)), *amended on other grounds on denial of petition for reh'g,* 866 F.2d 318 (9th Cir.1989).

**25.** *See Snyder,* 839 F.2d at 1085.

**26.** *Ivy,* 606 F.2d 524 (en banc).

**27.** *See Gaudet,* 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (permitting a widow to recover under general maritime negligence law for the death of her longshoreman husband, who died in territorial waters); *Smith,* 612 F.2d at 226 (permitting a widow to recover under an unseaworthiness claim for the death of her Jones Act seaman husband, who died in territorial waters).

**28.** 672 F.Supp. 929 (E.D.La.1987), *petition for interlocutory appeal under 28 U.S.C. § 1292(b) denied,* No. 87–9184 (5th Cir. Feb. 8, 1988).

**29.** *See id.* at 937 ("Only where the [non-financially-dependent] survivor and the deceased chose to live together could a court, perhaps, continue tacitly to presume dependency.").

**30.** *See, e.g., Anderson v. Whittaker Corp.,* 692 F.Supp. 764 (W.D.Mich.1988); *cf. Evich I,* 759 F.2d at 1433 (9th Cir.1985) (a deceased seaman's nondependent brothers could not maintain a wrongful death action under general maritime law, where there was no mention that the decedent had any other survivors (following *Glod v. American President Lines, Ltd.,* 547 F.Supp. 183, 185–86 (N.D.Calif.1982)) ("Recovery for maritime wrongful death would require [decedent]'s brothers to be dependent relatives."); *Cambria Steamship,* 505 F.2d at 523 (6th Cir.1974) (same, where the surviving brother was the decedent's sole surviving relative) ("*Moragne* and [*Gaudet*] speak consistently in terms of dependents").

**31.** *See id.* at 934–35 & n. 6 (recovery allowed only in *Patton–Tully* ). In *Kaiser v. Travelers Insurance Co.,* the Fifth Circuit initially affirmed a denial of loss-of-society damages to parents of a minor child killed in a boating accident. 487 F.2d 1300, 1301 (5th Cir.1974) (per curiam) (following the Fifth Circuit's earlier holding in *Canal Barge Co. v. Griffith (Petition of M/V Elaine Jones),* 480 F.2d 11 (5th Cir.1973) (loss-of-society damages are *never* recoverable under general maritime law), *vacated*

al Fifth Circuit cases where parents sued for the maritime wrongful death of their children, but in none of those cases did the Fifth Circuit purport to address the issue of *parents'* rights to seek damages for loss of society.[32]

The district court case cited by plaintiffs, *Hamilton v. Canal Barge Co.*,[33] is distinguishable from the present case since the parents in that case were, at least to some degree, dependent on their deceased seaman son.[34] Further, as the Fifth Circuit explained in *Sistrunk v. Circle Bar Drilling Co.*,[35] the Supreme Court in *Higginbotham* upset *Hamilton*'s specific rationale for extending loss-of-society benefits to parents.[36] The Fifth Circuit footnote cited by plaintiffs, footnote 11 in *Skidmore v. Grueninger*,[37] is also distinguishable since it concerns a surviving child who had been dependent on the decedent,[38] and

*on this ground on petition for reh'g,* 513 F.2d 911 (5th Cir.) (per curiam) (following *Gaudet* ), *cert. denied,* 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60 (1975)). Ten days later, the Supreme Court overruled *Canal Barge* in *Gaudet,* where it permitted a widow to recover loss-of-society damages for the maritime wrongful death of her husband. *See, e.g., Landry,* 511 F.2d at 143 (citing *McDonald v. Federal Barge Lines, Inc.,* 496 F.2d 1376, 1377 (5th Cir.1974) (per curiam) (extending *Gaudet* to a widow's case where there was both Jones Act and unseaworthiness liability)). On a petition for rehearing, the Fifth Circuit recognized, in light of *Gaudet* and *McDonald,* that *Canal Barge* was no longer the law—that loss of society could be recovered in at least certain circumstances—and thus granted the petition and ordered that the appeal be reset for oral argument. *Kaiser,* 496 F.2d 531 (5th Cir.1974) (per curiam). The case, however, settled before the second oral argument was to be held, and thus the Fifth Circuit never addressed whether the parents in that case came within the reach of *Gaudet. See Kaiser,* No. 73–2653, Clerk's Order (5th Cir. Jan. 23, 1975).

**32.** *See Tidewater Marine Towing, Inc. v. Curran–Houston, Inc.,* 785 F.2d 1317 (5th Cir.1986) (parents brought general maritime negligence action on behalf of the alleged "common-law wife" of the decedent who had lived and was killed in Louisiana; affirming dismissal of the case, since Louisiana law did not recognize the validity of "common-law" marriages); *Ivy,* 585 F.2d 732, *adhered to en banc,* 606 F.2d 524 (holding that dependent parents could not recover loss-of-society under the Jones Act, where the jury had found no unseaworthiness); *S/S Helena,* 529 F.2d 744 (mentioning in one sentence that among the plaintiffs were parents of certain of the decedents, *see id.* at 753, but not otherwise mentioning whether these parents had been dependent or not on their deceased children or whether any defendant objected to these parents' (as opposed to any widow's) seeking loss-of-society damages, and remanding the matter to the district court to fix the loss-of-society damages in light of *Gaudet* ), *after remand,* 547 F.2d 255 (5th Cir.1977) (per curiam) (holding the district court's unpublished findings on remand not clearly erroneous, but not mentioning what these findings were); *Futch v. Midland Enterprises, Inc.,* 471 F.2d 1195 (5th Cir.1973)

(affirming a summary judgment dismissal of a father's wrongful death case for lack of standing, where the decedent's widow, who was also the decedent's personal representative and the administratrix of his estate, had previously settled with the defendants).

**33.** 395 F.Supp. 978, 983–85 (E.D.La.1975) (Rubin, J.) (holding that parents who had "shown a modest loss of support" were entitled to recover for loss of their son's society as well, even though their son had left a posthumous child).

**34.** This reading of *Hamilton* follows the Fifth Circuit's holding in *Patton–Tully.* To the extent that the loss of services and "modest" loss of support, *see id.* at 986, to the parents in *Hamilton* was not enough for a court to hold them to have been dependent on their sons, the holding in *Hamilton* irreconcilably conflicts with the Fifth Circuit's holding in *Sistrunk* since the decedents in both *Sistrunk* and *Hamilton* were survived by children, who are a preferred class of beneficiaries under the Jones Act.

**35.** 770 F.2d 455, 458 n. 2 (5th Cir.), *reh'g denied mem.,* 775 F.2d 301 (5th Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986).

**36.** The Court notes further that *Hamilton* stresses that "[u]nder neither the Jones Act nor DOHSA ... is dependency required for a parent to recover." *Hamilton,* 395 F.Supp. at 985. This comment demonstrates little: first, neither statute permits recovery for loss of society; and second, almost by definition, there can be no recovery for loss of support without a showing of dependency.

**37.** 506 F.2d 716, 729 n. 11 (5th Cir.1975).

**38.** Nowhere in *Skidmore* does the Fifth Circuit specifically mention, one way or the other, whether the decedent's adult daughter had been dependent on the decedent. Elsewhere in the opinion, however, the Fifth Circuit does indicate that more than one of the decedent's three children (the other two of whom were minor children) had been dependent on their mother. *See id.* at 729 ("whether [the decedent] would have used such profits to contribute to the support of

not surviving parents who were not. Further, the Fifth Circuit's comments in *Sistrunk* on *Higginbotham*'s upsetting *Hamilton* apply equally to plaintiffs' reading of *Grueninger*.[39]

Turning to the present case, the Court notes that the decedent's mother had not lived with the decedent for years and was not financially dependent on him in any way. She comes squarely within the holding of *Truehart*, which this Court follows. Thus, the Court must dismiss her loss-of-society claim.

While the deposition testimony in the record is ambiguous, the Court must presume for purposes of this motion that the father and the decedent had been living together in the same home.[40] The question then is whether this sole fact is enough to differentiate *Truehart*—to permit the father to recover where the mother cannot.

In his brief, the father does not suggest any policy reason or case law support for giving the distinction significance. A review of the Supreme Court's *Moragne*-to-*Tallentire* tetralogy and the Fifth Circuit's opinions further explaining the tetralogy (and particularly, their discussions on dependency) shows that none of the cases turns on, or even suggests as perhaps important, the issue of whether a survivor had lived with the decedent; in other words, nothing suggests that these binding opinions were using the term "dependency" to mean anything other than financial dependency. It is not for this Court to give the concept of dependency anything other than its ordinary meaning.[41]

In sum, admiralty law suggests no good reason for treating nondependent surviving parents who had been living with their deceased child any differently from those

her husband and *dependent* children" (emphasis added)). This Court adds that an adult child may certainly be dependent on a parent, *see Solomon*, 540 F.2d at 789 (affirming award to an adult child for loss of support and loss of formal education at college level), just as a parent may be dependent on a minor child, *see Patton–Tully*, 797 F.2d at 213.

The district court opinion in *Skidmore*, however, explicitly states that this daughter, who was 19¼ years old when her mother died, had been living with her mother and stepfather, and had been dependent on them (among other things, her mother receiving support payments for this daughter from her first husband, the daughter's father). *See Skidmore v. Grueninger*, Civ. 70–1015, Opinion at 20, 22 (E.D.La. filed Jan. 7, 1974) (Boyle, J.).

**39.** Plaintiffs read footnote 11 as stating, at least in dictum, that nondependent children may recover for loss of a parent's society under general maritime law. Suggesting that the decedent's adult daughter would have been a beneficiary under both DOHSA and the Jones Act, *Skidmore* relied on admiralty's uniformity principle to find that the daughter should be permitted to recover for her loss of society. *Skidmore*, 506 F.2d at 729 n. 11. Subsequent cases binding on the panel in *Skidmore*, however, have made it clear that the daughter would not have been a beneficiary to recover loss-of-society under either DOHSA, *see Higginbotham* and *Tallentire*, or the Jones Act, *see Ivy*, 606 F.2d 524 (en banc). *See also Truehart*, 672 F.Supp. at 934–35 n. 5. With these subsequent cases, it would be improper to follow plaintiff's reading of *Skidmore*, for to do so would require that this Court follow some parts of DOHSA and the Jones Act (viz.,

that nondependent children may sue for damages thereunder), but not other parts that equally apply (viz., that the damages they may recover thereunder do not include loss-of-society). *Cf. The Tungus v. Skovgaard*, 358 U.S. 588, 594–95, 79 S.Ct. 503, 507–08, 3 L.Ed.2d 524 (1959) (refusing to follow, in a pre-*Moragne* maritime wrongful death case, one part of a state statute that, taken alone, would appear to give the plaintiffs a right of recovery, without following its remainder, which showed that the plaintiffs had no right of recovery thereunder).

**40.** At oral argument, both Donald Sr.'s and defense counsel appeared to agree that both Donald Sr. and Donald Jr. had been living together in Donald Sr.'s parents' home.

**41.** Even if this Court were to accept what Donald Sr.'s counsel characterizes as the dictum in *Truehart*—that dependency is presumed between those relatives who live in the same household, *see supra* note 26—it would not follow that this presumption is an irrebuttable one. Having produced uncontested evidence that Donald Sr. never received any money or financial support from the decedent, defendants would have met the presumption, *see generally* F.R.Ev. 301; *Panduit Corp. v. All States Plastic Manufacturing Co.*, 744 F.2d 1564, 1579 (Fed. Cir.1984) ("If a finding on the evidence is made that a presumed fact has been effectively rebutted, the presumed fact ceases to exist. It does not linger on to be weighed against the evidence."), thus placing the burden back on Donald Sr. to produce evidence of genuine dispute as to dependency—a burden he has not met.

who had not. Thus, the Court must dismiss the father's loss-of-society claim.

### G. *Punitive damages*

 The parties did not specifically address the punitive damage claims against the decedent's employers; the Court must nonetheless address this issue.

Punitive damages are non-pecuniary.[42] For this reason, the Ninth Circuit has held that they are not recoverable under the Jones Act.[43] While the Fifth Circuit has not directly addressed this issue, its dicta appear to follow this holding.[44] This Court has found no case to hold otherwise.

While the Fifth Circuit has held that a widow stated a cause of action for punitive damages in her wrongful death unseaworthiness case for the willful, wanton, or grossly negligent conduct of the shipowner,[45] no Fifth Circuit case has yet to discuss who else may seek to recover such punitive damages.

Being non-pecuniary, punitive damages are best treated just as other non-pecuniary damages such as those for loss of society are treated under general maritime law: a plaintiff should have standing to seek punitive damages under general maritime law if and only if he has standing to seek loss-of-society damages thereunder, and vice versa. Thus, because the Court dismisses all loss-of-society claims, it must dismiss the punitive damage claims as well.

Further, it is generally held that punitive damages are not recoverable unless the plaintiff recovers for actual damages as well.[46] Thus, because the mother has shown no evidence of actual damages, the Court dismisses her punitive damage claim for this reason as well—to the extent she even has a separate punitive damage claim from the decedent's estate.[47]

### III.

For these reasons, the Court dismisses with prejudice all claims except Donald Sr.'s claim for funeral and burial expenses.

---

**42.** *Kopczynski v. The Jacqueline,* 742 F.2d 555, 561 (9th Cir.1984), *cert. denied,* 471 U.S. 1136, 105 S.Ct. 2677, 86 L.Ed.2d 696 (1985); *cf. Merry Shipping,* 650 F.2d at 626 (distinguishing punitive damages from pecuniary damages).

**43.** *Kopczynski,* 742 F.2d at 560–61; *see also Bergen,* 816 F.2d at 1348–49 (9th Cir.1987) (reversing a punitive damage claim for seamen's deaths under general maritime unseaworthiness law, where the action was also covered by DOHSA and the Jones Act).

**44.** *See Merry Shipping,* 650 F.2d at 626 ("Doubt exists as to recovery because of this Court's previous holding [in *Ivy* (en banc)] that Congress intended only *pecuniary* losses to be recoverable under the [Jones] Act." (emphasis in original)); *see also Shaw v. Garrison,* 545 F.2d 980, 986 (5th Cir.) (dictum that "punitive damages are not available under the terms of ... the FELA"), *reh'g denied mem.,* 555 F.2d 1391 (5th Cir.1977), *rev'd on other grounds sub nom. Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).

**45.** *Merry Shipping,* 650 F.2d 622.

**46.** *Alcorn County v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1170 (5th Cir.1984) (noting that this is the rule "in most jurisdictions"); *Lanier*

v. *Sallas,* 777 F.2d 321, 325 (5th Cir.1985); *accord Prosser and Keeton on Torts* 14 (5th ed. 1984). While this Court has found no case where the Fifth Circuit has addressed this question on an issue of admiralty or federal law, the Fifth Circuit has consistently applied this rule to state law. *See Lanier,* 777 F.2d at 325 (applying Texas law); *Vidrine v. Enger,* 752 F.2d 107, 110 (5th Cir.1984) (applying Mississippi law); *Mack v. Newton,* 737 F.2d 1343, 1363 (5th Cir.) (applying Texas law and noting that "[a] verdict of *nominal* damages is not sufficient" (emphasis in original)), *reh'g denied mem.,* 750 F.2d 69 (5th Cir.1984); *Alcorn County,* 731 F.2d at 1170 (applying Mississippi law).

**47.** The Ninth Circuit has held that a decedent's personal representative who stated a cause of action only for survival damages to the decedent's estate under general maritime law, *see Evich I,* 759 F.2d at 1434, could seek punitive damages, *see Evich II,* 819 F.2d at 258. To the extent that punitive damages are properly considered survival damages owing to a decedent's estate and not wrongful death damages owing directly to the decedent's survivors (an issue not addressed in *Merry Shipping*), then the father's punitive damage claim should likewise fail for failure to have any accompanying actual damages on his survival claim.